## Schlaudecker *versus* Marshall *et al.* .

1. Act of May 10th 1871 required the Quarter Sessions to appoint a board of license, " with the same authority to grant licenses to taverns, &c., in the city of Erie, as the Quarter Sessions by law *now* has ;" the provisions of the Act of March 31st 1856; sect. 8, to be complied with before granting license. *Held*, that the authority of the board was to be ascertained by the law as to the Quarter Sessions at the passage of the act.

2. The board had a discretion, and could not be compelled by mandamus to grant license.

3. The discretion exercisable by the Quarter Sessions as to licenses is a

[Schlaudecker *v.* Marshall.]

sound discretion on the circumstances of each case, not on a general opinion on the propriety of granting license.

4. Whether licenses should be granted is a legislative, not a judicial opinion.

5. It is the duty of the tribunal to hear and determine each case, to ascertain the fitness of the applicant, the necessity for his house for public accommodation, and that he has fully complied with the law.

6. The Acts of Assembly, in relation to tavern licenses, examined and construed.

October 24th 1872. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Erie county :* of October and November Term 1872, No. 114.

The writ of error in this case was to the judgment of the court below refusing to award a mandamus to compel James C. Marshall and others composing the Board of Licensers of the city of Erie to issue a license to Frank Schlaudecker to keep an eating-house in that city.

By the Act of May 10th 1871, the Court of Quarter Sessions of Erie county was required at February term of every year to appoint a board of licensers, with the same authority to grant licenses as the Court of Quarter Sessions had. All applications to this board for licenses were required to be filed with the clerk of the Quarter Sessions, in accordance with the 8th section of the Act of March 31st 1856 (Pamph. L. 201, 2 Br. Purd. 942, pl. 13). Licenses might be granted to keep eating-houses, which authorize the sale of liquors, foreign and domestic wines, &c. The board were to meet on the 1st Monday in April in each year, hold adjourned meetings, &c.

In March 1872 Schlaudecker filed his petition, setting out that he was a citizen of the United States, of temperate habits and good moral character, well provided with house-room, &c., for the accommodation of the public and entertainment of strangers and travellers, and asked for license to keep an eating-house at the place designated in his petition.

Attached to his petition was a recommendation as required by law, signed by twelve citizens of the ward in which the house was located ; with the petition he filed a bond with two sureties conditioned according to the Act of Assembly.

The board declined to grant the license.

Schlaudecker on, the 7th of May 1872, petitioned the Court of Common Pleas, setting out his application to the board of license, and their refusal, as above stated, and prayed for a mandamus commanding them to grant a license to him. On this petition the court granted a rule on the board to show cause why a mandamus should not be awarded as prayed for.

The respondents answered, amongst other things, that "There were thirty-one applications for tavern license, eight for wholesale

[Schlaudecker *v.* Marshall.]

liquor license, and ninety-five for eating-house license, of which the board granted twenty-five tavern licenses, six wholesale liquor licenses and thirty-nine eating-house licenses. Judging that they had granted a sufficient number of licenses in those different branches to accommodate the public and entertain strangers and travellers; * * * the respondents did adjudicate upon said application and refused the license so applied for.

" The respondents claim that under the Acts of Assembly, giving to the Court of Quarter Sessions power to grant licenses to vend liquors by hotel-keepers and eating-house keepers—In order to entitle the applicant to a license there are three facts absolutely to exist, to wit: 1st, The place proposed to be licensed is necessary to accommodate the public. 2d, That the applicant is of good repute for honesty and temperance; and 3d, That he is well provided with house-room. On failure in any one of these prerequisites the Court of Quarter Sessions has no power to grant the applicant a license. The board of licensers for the city of Erie possess the powers of the court, no more nor no less.

" The respondents answer and say that they claim it is not only simply their privilege, but an important duty enjoined on them by law fully and carefully to examine every application for license, and when they are found to be in form according to the provisions of the Act of Assembly, that would constitute a primâ facie case. Then it becomes the duty of the board, particularly when there are one hundred and thirty-four applications for license to deal out spirituous liquor in a city of a population of about twenty thousand, first, To see if the public interest requires that number to be licensed; second, Is the applicant a person of good repute for honesty and temperance? and third, Has he the necessary house-room? These facts the board has to ascertain from evidence or personal inspection, and thereupon to judge and determine upon all the cases submitted to the board. These respondents claim that it is their duty, in discharge of an obligation they owe to the public, not to take the certificate of the twelve citizens as conclusive as to the necessity of the tavern or eating-house for the public accommodation, as to the honesty and temperance of the applicant, and as to his being provided with house-room, but to examine into the matter and upon a full and careful investigation to decide who shall have license and who shall not. These respondents did decree upon Mr. Schlaudecker's application and rejected it, and believe they acted in accordance with the law in so doing."

On the 7th of May 1872 the court discharged the rule, and this writ of error was taken by Schlaudecker.

*J. Ross Thompson* (with whom were *C. P. Biddle* and *G. A. Allen*), for plaintiff in error, referred to the above-cited Acts of Assembly; Acts of April 20th 1858; April 14th 1859, Pamph. L. 653, 2

[Schlaudecker v. Marshall.]

Br. Purd. 943, pl. 15, 16; April 10th 1849, Pamph. L. 574. The words "shall" or "may" are to be construed imperatively; Attorney-General v. Lock, 3 Atk. 164; Turnpike v. Miller, 5 Johns. Ch. 101; Minor v. Bank, 1 Peters 64.

*F. P. Longstreet* (with whom was *S. P. Longstreet*), for defendants in error, referred to the same Acts of Assembly.

The opinion of the court was delivered, January 6th 1873, by

AGNEW, J.—In the court below this case was a rule for a mandamus to compel the board of licensers of the city of Erie to grant a license to the plaintiff in error to keep an eating-house.

The rule was discharged, and hence this writ of error. The real question in the case is upon the nature and extent of the discretion to be exercised by the board of licensers in granting or refusing licenses for eating-houses. It arises under the Act of 10th May 1871, P. L. 728, giving to the board "the same power and authority to grant licenses in the said city of Erie as the Court of Quarter Sessions by law *now* has." The requirements of the application for the license are governed by the 8th section of the Act of 31st March 1856, P. L. 201. See section 2d, Act 10th 1871. But the power and authority of the board in acting on the application are to be ascertained by the state of the law as to the Court of Quarter Sessions, at the date of the Act of 1871. This involves an attentive examination of the legislation of the state for a series of years, a subject of no small difficulty, owing to the fluctuations in the legislature as the temperance or liquor interests prevailed.

The initial point of modern legislation on the subject of licenses, may very properly be said to be the Act of 11th March 1834, P. L. 117, reported by the revisers of the code as the result of all the then existing laws, together with their own modifications and amendments. The discretion conferred upon the Court of Quarter Sessions by this act will be stated hereafter, when we come to the reviving Act of 14th April 1859, P. L. 653. For twenty-one years the Act of 1834 remained without material change. In 1855, the temperance reform movement prevailing in the legislature, the Act of 14th April 1855, entitled "An Act to *restrain* the sale of intoxicating liquors," was passed, P. L. 255. This act was nearly prohibitory in its terms, and in derision was called the "Jug Law." It lasted but a year and was overthrown by the Act of 31st March 1856, P. L. 200, entitled "An Act to *regulate* the sale of intoxicating liquors," an act passed through the influence of what was then known as the "Liquor League." The Act of 1856 was considerably modified by the Act of 20th April 1858, P. L. 365, and the two, with a few alterations since adopted, form

the basis of the present system of licenses for the sale of intoxicating liquors.

Under the Act of 1856 the discretion of the court in granting licenses differed somewhat, but not greatly, from that given by the Act of 1834, and was regulated by the sixth section, which required the court to fix by rule or standing order a time at which applications for license should be heard, and when all persons applying or making objections might be heard by evidence, petition, remonstrance or counsel. This provision was essentially changed by the sixth section of the Act of 1858, which made the granting of the license mandatory " to citizens of the United States of temperate habits and good moral character, whenever the requirements of the laws on the subject are complied with by any such applicant, to sell the liquor aforesaid for one entire year from the date of his license : *Provided,* That nothing herein contained shall prohibit the court from hearing other evidence than that presented by the applicant for license : *And provided further,* That after hearing the evidence as aforesaid, the court, board of licensers or commissioners *shall* grant or refuse a license to such applicant *in accordance with the evidence.*"

This act took away the discretion which the courts had exercised under the Acts of 1834 and 1856, and made it a matter of legal judgment on the evidence. The temperance movement rallying again effectuated the passage of the Act of 14th April 1859, P. L. 653, in these words : " That it shall be lawful for the several Courts of Quarter Sessions of this Commonwealth to hear petitions, in addition to that of the applicant, in favor of and remonstrance against the application of any person applying to either of them for a license to keep a hotel, inn or tavern, and thereupon to *refuse* the same, whenever, in the opinion of said court, such inn, hotel or tavern is not necessary for the accommodation of the public and entertainment of strangers and travellers. And so much of the sixth section of the Act of Assembly relating to the sale of intoxicating liquors, passed the 20th day of April, A. D. 1858, as is inconsistent herewith, is hereby repealed : *Provided,* That the several Courts of Quarter Sessions empowered to grant licenses shall have and exercise such discretion, and no other, in regard to the necessity of inns and taverns, as is given to said courts by the act relative to inns, approved 11th March 1834." Thus the discretion of the courts upon the necessity of inns and taverns was turned back upon the Act of 1834, the first section of which merely empowered the court to grant such licenses. The third section provided that " no court shall license any inn or tavern which shall not be necessary to accommodate the public and entertain strangers and travellers." The fifth section further enacted that " no court shall license any person to keep an inn or tavern unless from the petitions and certificate or from their own knowledge or

[Schlaudecker v. Marshall.]

upon evidence sought for and obtained, they shall be satisfied of the fitness of the person applying and the sufficiency of the accommodations as aforesaid." The fourth section had provided that no court shall grant a license unless upon a certificate of twelve citizens, setting forth the necessity of the inn or tavern to accommodate the public and entertain strangers and travellers, and the good reputation of the applicant for honesty and temperance, and his being well provided with house-room and convenience for the accommodation of strangers and travellers. The bearing of the Act of 1834 upon the discretion of the court is noticeable in the negative character of its provisions to prevent granting unnecessary licenses. The nature of this discretion will be discussed after noticing the legislation on the subject of eating-houses or restaurants as they are termed. They were provided for in the Act of 10th April 1849, P. L. 570, the 20th section of which forbade them from being kept without a license first obtained from the county treasurer, and provided for classifying and rating them. By the Act of 1856 the mode of granting licenses to eating-houses was changed and given to the Court of Quarter Sessions, as may be seen in the 6th, 7th, 8th and 14th sections. The Act of 1858 again changed the manner of granting them, dispensing with the certificate required by the 8th section of the Act of 1856, and returning the power of granting the license to the county treasurer. See sect. 10, Act 1858, P. L. 367. Under this section the treasurer exercised no discretion, except to see that the applicant had complied with the requisites of the law. This was changed afterwards, as to the counties of Erie, Warren and Clinton, by the Act of 11th April 1866, P. L. 560, which adopted the provision for the borough of Warren, contained in the Act of 22d April 1863, P. L. 534, enacting "that all licenses for the keeping of eating-houses, which shall authorize the sale of domestic wines and malt and brewed liquors within the borough of Warren, Warren county, shall hereafter be granted only by the Court of Quarter Sessions of said county, in the same manner and subject to the same restrictions as licenses to hotels, inns and taverns are now granted, except that said eating-houses shall be classified and rated as provided by existing laws." This local act was superseded by the general Act of 22d March 1867, P. L. 40. The first section put the hearing of all applications for licenses to sell intoxicating drinks on the same footing, directing that it should be lawful for said court to hear petitions in addition to that of the applicant, in favor of and remonstrance against the application for such licenses; and in *all cases* to refuse the same, whenever, in the opinion of the said court, having due regard to the number and character of the petitioners for and against such application, such license is not necessary for the accommodation of the public and entertainment of strangers and travellers; and upon sufficient cause shown to re-

[Schlaudecker *v.* Marshall.]

voke any license granted by them. The second section expressly directs that applications for license to keep an eating-house or restaurant shall be made in the same manner and to the same authority as applications for license to keep a hotel, excepting that the regulation as to bed-rooms shall not apply; and also repeals expressly the authority in the 10th section of the Act of 1858, conferred on the county treasurer to grant licenses to eating-houses and retail breweries. In conclusion, therefore, we find that the granting of licenses to hotels, inns, eating-houses and restaurants, all stand on the same footing as to the authority to which the power is confided, and it now remains only to inquire into the nature and true character of the discretion to be exercised by the Court of Quarter Sessions in granting these licenses.

No subject has been productive of more difference of opinion and practice than this in the different judicial districts of the state. Some judges holding it to be obligatory on the court to grant every license where the applicant has brought himself within the provisions of the law as to the terms of his application, and others holding that they are not bound to grant any license whatsoever. Clearly neither opinion is right; the discretion which the court exercises being a sound discretion upon the circumstances of each case as it is presented to the court, and not a general opinion upon the propriety or impropriety of granting licenses.

Whether any or all licenses should be granted is a legislative, not a judicial question. Courts sit to administer the law fairly, as it is given to them, and not to make or repeal it. The law of the land has determined that licenses shall exist, and has imposed upon the court the duty of ascertaining the proper instances in which the license shall be granted, and therefore has given it to the court to decide upon each case as it arises in due course of law. The act of deciding is judicial, and not arbitrary or wilful. The discretion vested in the court is, therefore, a sound judicial discretion; and to be a rightful judgment it must be exercised in the particular case and upon the facts and circumstances before the court, after they have been heard and duly considered; in other words, to be exercised upon the merits of each case, according to the rule given by the Act of Assembly. To say that I will grant no license to any one or that I will grant it to every one is not to decide judicially on the merits of the case, but to determine beforehand without a hearing or else to disregard what has been heard. It is to be determined not according to law, but outside of law, and it is not a legal judgment, but the exercise of an arbitrary will. Discretion is thus described: "Where anything is left to any person to be done according to his discretion the law intends it must be done with a *sound* discretion and *according to law*, and the Court of King's Bench hath a power to redress things that are *otherwise* done, notwithstanding they are left to the discretion of

[Schlaudecker *v.* Marshall.]

those that do them," Tomlin's Law Dict., vol. 1, tit. "*Discretion.*" " And though there be a latitude of discretion given to one, yet he is circumscribed that what he does be necessary and convenient, without which no liberty can defend it:" Ibid. It is the duty of the court, therefore, to hear and determine each case on its evidence and facts; to ascertain the fitness of the applicant, the necessity of his house for the public accommodation as a hotel or as an eating-house (and this involves the number of each in the particular locality), and to see that the applicant has fully complied with the law, before his license can be granted. This is a large discretion, and is to be exercised primarily for the public good and secondarily for the private interest; and this being the power and authority of the Court of Quarter Sessions, is the measure also of the duty of the board of licensers. It is an error to suppose, as argued by the plaintiff in error, that the sole duty of the board is confined to the inquiry whether the applicant is a citizen of the United States, and is a man of good moral character and temperate habits. The mandamus was properly refused, and the order of the court below is affirmed.