## PETITION OF WALLACE G. RAUDENBUSCH.

FOR A MANDAMUS TO THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

Argued April 28, 1888—Decided May 7, 1888.

1. An applicant for a license to sell at retail vinous, spirituous, malt or brewed liquors, under the act of May 13, 1887, P. L. 108, is not entitled to such license as a matter of right, on the ground that he has complied with the provisions of the act and no remonstrances have been filed against his application.

2. Though there be no remonstrance or objection on the score of the petitioner's want of fitness, yet the court must pass upon the question whether his house is necessary for the accommodation of the public and the entertainment of strangers and travelers, a question of public concern, to which the petitioner is not a party, in the sense that persons are parties to private litigation.

Statement of Facts.

3. The granting or refusal of licenses, under said act, is a matter of legal discretion, to be exercised wisely and not arbitrarily; to perform this duty, the court below may hear petitions, remonstrances, or witnesses, and in some instances act of its own knowledge, and this court will not review the manner in which such discretion is exercised.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; TRUNKEY and GREEN, JJ., absent.

No. — January Term 1888, Sup. Ct.

On April 23, 1888, Wallace G. Raudenbusch filed his petition in the Supreme Court, showing as follows:

That he resides at No. 18 North Twelfth street, Ninth ward of the city of Philadelphia, and has for the last past five years carried on the business of selling liquor at retail at the said house, having been heretofore licensed to carry on said business in conformity with the laws of this commonwealth heretofore existing.

That, desiring to continue said business and apply for a license therefor, and being a citizen of the United States, of temperate habits and good moral character, he, in conformity with the terms of the act of assembly of May 13, 1887, P. L. 108, on January 31, 1888, filed with the clerk of the Court of Quarter Sessions of the county of Philadelphia his petition for a license to sell at retail vinous, spirituous, malt or brewed liquors, or admixtures thereof, for the period of one year from June 1, 1888; the said Quarter Sessions having fixed by rule or standing order the fifth day of March, 1888, as the time at which applications for said license should be heard.

That he paid to the said clerk of the Court of Quarter Sessions the sum of five dollars for expenses connected therewith, and the said clerk did publish in two newspapers, the *Philadelphia Press* and the *Record*, being two of the newspapers designated by said court, the name of your petitioner, among others, as an applicant for such license, with his residence and the place for which his application was made, not less than fifteen nor more than twenty-five days before the said time fixed by such court for the hearing of such applications.

That his said application was not made for a license to sell in any room where groceries were or are sold at wholesale or retail.

Statement of Facts.

That the petition to the said Court of Quarter Sessions filed by your petitioner contained: [all the averments required to be set out in such petition by § 5, act of March 13, 1887, were verified by the affidavit of the petitioner made before the clerk of the said court, and a true copy thereof attached, and marked Exhibit A.]

That there was annexed to said petition a certificate signed by twelve reputable qualified electors of said ward of said city of Philadelphia in which such liquors are to be sold, setting forth the facts required by the terms of section 6 of said act, a copy of which certificate is hereto annexed marked, Exhibit B.

That he further answered the printed questions required by all applicants for said license to be answered by said court, a copy of which answer is hereto annexed marked, Exhibit C.

That he also presented a petition to the said court in favor of granting his said application, signed by fifty-four business men of his neighborhood, a copy of which is hereto annexed marked, Exhibit D.

That no remonstrance against his said application was presented by or on behalf of any person.

That upon the said March 5th, being the time fixed for a hearing of his said application, your petitioner presented himself as an applicant for said license before the Hon. D. Newlin Fell, Hon. Robert N. Willson, Hon. Jas. Gay Gordon and Hon. F. Amedee Bregy, judges of the Court of Common Pleas of the said county of Philadelphia, and assigned by the said judges as of their number to hold a Court of Quarter Sessions for the purpose of granting licenses under the terms of said act of assembly of May 13, 1887; and, being called by the court to the bar of the court and being duly sworn and interrogated as to his rights to said license and the truth of the facts set forth in his said application, and having made answer to the same in affirmance and corroboration of his said application or petition, and having made no statement which in any way conflicted with his right as aforesaid, or contradicted any statements made by him in his said petition, and no evidence, petition, remonstrance or statement of counsel or of any other person whatever, being made or offered, or any objection of any kind being made against him or his said

application, he was permitted to depart and dismissed from any further hearing.

That no plans, maps, reports, statements or evidence of any kind, written or oral, was offered at said hearing against his said application or petition, nor did said judges of said court at said hearing require the production of any further testimony, or in any way intimate or object to the granting of said license, until on the second day of April, 1888, it was announced by the said judges of said court that the said application or petition of your petitioner was refused, although your petitioner at the said time was ready and willing to enter into the bond, and had ready John W. Land and Alfred Werrick to become his sureties on his said bond, in conformity with the terms of the said act and of his petition as aforesaid, and was then ready and willing to pay, as classified and required to pay, into the treasury of said city, being a city of the first class of this commonwealth, the sum of five hundred dollars and all attendant costs and expenses. And your petitioner avers that the said judges of said court, arbitrarily and contrary to law and the act of assembly in that behalf made, refused to grant to your petitioner the said license as applied for by him as aforesaid.

Your petitioner further avers that he is a citizen of the United States, of good moral character and temperate habits, and has invested in his said business under previous license laws a large amount of money, in all the sum of $6,000, and established a business which affords or yields a livelihood and support for himself and his family, and that he rents the same from John M. Doyle, the owner of the premises on which said business has been and is to be conducted, and the same not being situated in the neighborhood of any churches, schools or educational establishments.

Your petitioner further alleges that he never has made sales of liquors or kept his tavern open upon Sundays or violated or offended against any license law or any other law of this commonwealth, and asserts that, having kept a reputable and orderly place for the conduct of his said business and the accommodation of the public and entertainment of strangers or travelers, he is, under the laws and the said act of assembly of May 13, 1887, entitled to a license as prayed for under said

Arguments.

application; and he further asserts that under the terms of said act, having complied with all the requirements of said law, the said court or the judges thereof cannot refuse his said application or the granting of his said license.

That from the decree of said court refusing said license there is no appeal, no bill of exceptions or writ of error; and, the action of the said judges of said court being a refusal to grant to your petitioner that which the law entitles him to, he having complied with all the requirements of the law, he prays that the said judges of the said Court of Quarter Sessions who heard his said application and petition and who refused to grant the same, may be commanded, first, by an alternative mandamus to show cause why the prayer of said petition or application should not be granted, and, second, by a peremptory mandamus to do fully all that is required to be done by the said act, and justice.

Exhibits A. B. and D. attached to the foregoing petition are sufficiently indicated. Exhibit C. was as follows:

QUESTIONS TO BE ANSWERED BY APPLICANT.

1. Are groceries now sold upon the premises mentioned in your application? Answer: No.

2. Will you allow groceries to be sold upon the said premises during the continuance of the license, if it is granted? Answer: No.

3. Have you ever been indicted or convicted of the violation of any law of this commonwealth, relating to the sale of liquors, or of keeping a disorderly house or bawdy house? If so, when and where? Answer: No.

4. Have you ever been convicted of any criminal offense? If so, when, where and what? Answer: No.

5. Has any license granted to you for the sale of liquors ever been revoked? If so, when? Answer: No.

[Verified.]

*Mr. George W. Biddle* and *Mr. Thomas R. Elcock*, for the petitioner:

1. The act of May 13, 1887, is a queer jumble of different sections of old laws patched out with various provisos, intended to form for the commonwealth an entire new system of licensing the sale of liquor by retail. That it has not accomplished

such an object, can best be seen by the fact that one half of the county courts of this commonwealth interpret it as a mandatory act, in respect to the granting of the license, when a proper petition has been filed and no remonstrance made against the granting; whilst the other half hold that it vests them with an absolute and almost despotic power over the same.

Such a code of laws is of course merely a police regulation, while it continues as a regulation; but, when it involves the arbitrary exercise of power in certain individuals, whether they be called a court, a commission, or a board, it becomes a highly penal act in its nature, confiscating property without compensation, and abolishing what have heretofore been regarded as legal personal rights. That this enactment is not to be regarded as simply a prohibitory statute, can be told by its title, which by the constitution must be expressive of the object of the act, and it is simply "to restrain and regulate the sale of liquors" —not to prohibit, nor to authorize any one or any court to disturb a vested right, or deprive a citizen of prior rights, nor to restrain particular individuals, if of good moral character and citizens of the United States, or particular localities, from the sale of liquors. *Restrain* does not mean to prohibit absolutely, or annihilate, or destroy, or refuse. It means, "to abridge, to hinder from unlimited enjoyment." It is the regulation of a business, recognized as such by the laws of the state, and regulated only, not suppressed or declared unlawful. If it were an act to suppress the business in certain localities, or as to certain individuals, the title would not befit the enactment or be expressive of the intention of the legislature. It is not necessary to argue in favor of a wiping out of the statute on a constitutional construction. It can be supported precisely as it should be, as a regulation of a heretofore legitimate business, maintained and declared lawful even by this act.

2. Let us review the different sections of this act bearing upon the points in controversy. Section I. makes it lawful to maintain a house for the sale of liquors, etc., "if a license be obtained as hereinafter provided." Query, how? By section II. licenses *shall* only *be granted* to citizens of the United States, of temperate habits and good moral character. This is a command directed by this section. *Granted* means conceded, yielded, bestowed, conveyed (see Webster), to those

citizens of temperate habits and good moral character. By section III., such license may be granted only by the Court of Quarter Sessions, etc. This is a mere delegation of the power, or an appointment under it, to execute the deed that shall yield or grant or bestow the license granted by the common-wealth. That the word *may* in the sentence " may be granted," should be read *shall* cannot be questioned; for the intention of the act, so far as Philadelphia is concerned or regulated, was to take from the officers theretofore authorized to grant licenses that power which previously resided in the city treasurer, city commissioners and clerk of the Court of Quarter Sessions.

*May* means *must*, whenever third persons or the public have an interest in having the act done which is authorized by such permissive language : Lucas v. Ensign, 4 N. Y. Leg. Ob. 142. It may be construed to mean *shall* when the public or individuals have a claim de jure that the power shall be exercised : Turnpike Co. v. Miller, 5 Johns. Ch. 113 ; Malcolm v. Rodgers, 5 Cow. 188 ; or when the good sense of the entire enactment requires the change : People v. Brooklyn, 22 Barb. 404. And the rule is general that where a duty is imposed upon officers by statute, whether by words which are peremptory in themselves or merely permissive, they have no discretion to refuse its performance as against a party having an absolute interest in it : Martin v. Mayor, 1 Hill 545. The true distinction is this : Where the provision of the act is the essence of the thing required to be done, and by which jurisdiction to do it is obtained, it is mandatory ; otherwise, when it relates to form and manner ; and, where an act is incidental, or after-jurisdiction has been obtained, it is directory : Marshall v. Langworthy, 6 Hill 646 ; Striker v. Kelly, 7 Hill 9. Lord MANSFIELD's rule, whether a statute was mandatory or not, was, that it depended upon whether the thing directed to be done was the essence of the thing required : Rex v. Loxdale, 1 Burr. 447.

3. The object was to abolish license boards, commissions, and independent officers. Following the reading of this section of the act, which is the important one now before the court, let us read : " All persons applying or making objections to applications for license may be heard by evidence, petition, remonstrance or counsel." It may be asked, why such an enactment should be made ? If it is a judicial act the im-

plication is of course, that there shall be a hearing, else no valid judgment. This particular language is a copy from the act of March 31, 1856, P. L. 201, § 7, which by special exception never applied to the counties of Philadelphia and Allegheny. It was a crude act and received such different interpretations by the different county courts, that the legislature, by an amendment passed on April 14, 1859, P. L. 653, designated or defined what was meant by evidence, petition, remonstrance or counsel; and it was further amended by act of March 22, 1867, P. L. 40, which has received the interpretations of this court in Reed's Appeal, 114 Pa. 452.

From the practice known therefore to exist, and from the amendments just cited, it cannot be said that the power exists in the Court of Quarter Sessions to hear evidence against an application, unless a remonstrance be filed and an issue thus raised. The act of 1856, which was never applied to Philadelphia, did not designate any form or requisites of an application, but simply required the applicant to file a petition; while the act of 1887, as will be seen by the fifth and sixth sections thereof, requires a statement to be made as is found in the present petition, and defines a false statement made therein as perjury and punishable as such. In reading the section referred to, the language is, "to be heard by evidence, petition, remonstrance or counsel." Which shall predominate? The evidence, the petition, the remonstrance, or counsel? If the petition conform to all the requirements of the laws and no remonstrance is filed, what has the applicant or the petitioner to prove? The law directs him to do certain things which he does, and he verifies them by his personal appearance before the court and an examination under oath. If nothing is heard against him, is it not the fair interpretation of the act that his application and license shall be granted?

4. Suppose one of the Courts of Common Pleas should refuse to enter judgment for want of an affidavit of defence, a copy having been filed in the given time and form in an action of assumpsit, no objection being made by any one. What would the Supreme Court do? Though error will not lie to the exercise of a judicial discretion, yet for excess of power the act may be annulled: Catlin v. Robinson, 2 W. 373. The power granted to the court, or to the individuals composing the

court, means that they must hear legal evidence, and not exercise a discretion, if they have such, upon private investigation or information not given in evidence. The word *evidence* in the act, means evidence such as is heard in all judicial tribunals, and upon which legal judgment can be founded, because there can be no bill of exceptions and no review of that evidence by a superior tribunal. It does not give or create a discretion and indeed should be restricted to a consideration of purely legal testimony. This has been well stated by Chief Justice AGNEW, in Schlaudecker v. Marshall, 72 Pa. 200. " And although they have lawful authority either by charter or prescription to put any one from his freedom, and that they have just cause to remove him, yet it appeareth by the return, that they have proceeded against him without hearing him to answer what was objected, or that he was not reasonably warned; such removing of him is void, and shall not bind the party because, quia quicunque aliquid statuerit parte inaudita altera, æquum licet statuerit, haud æquus fuerit, and such removing is against justice and right:" Bagg's Case, 11 Co. R. 93.

5. When the act directs that the petitioner shall be heard by petition, and he is so heard, is not the act complied with, even though there be not evidence, remonstrance or counsel? It does not require that he shall have all four of the elements to determine his right. When the act defines that the petition shall contain all that is required by the court to be known, it gives it the power to exercise its jurisdiction. The right of the judges to act upon information or knowledge within their own keeping, is not superior to the rights of a juror to do the same thing; and it has been well settled, that when a juror on the trial of a case is possessed of information material to the question under consideration, he should be sworn as a witness and give his evidence as other witnesses would do: see 3 Bl. Com., 375*. Remonstrance is not evidence, statement of counsel is not evidence; nor is either so intended .by the act, except in so far as is regulated by the seventh section, which is expressive of the intention of this particular language, " may be heard by evidence, petition or counsel"; and to that we must refer at this point, as expressive of the legislative intent, because however crudely the act may be framed, the rule is to give effect to the legislative intent of the whole act.

6. Section 7 of the act, which is copied from the act of March 22, 1867, P. L. 40, has received construction in Reed's Appeal, already referred to. This section takes away absolutely any discretion in the court, save as to the particular command to decide according to the number of petitioners for and against the application. It was an enactment brought about in consequence of a practice of the judges of the county courts to hear evidence irrespective of petitions and remonstrances, and to determine arbitrarily upon the application. It was intended to destroy this practice, and to give effect to the sentiments and will of the people of the particular locality as to the character of the applicant and the necessity for his house. Where the court is restricted to this method of determining in a contested case the right of the applicant, what argument can be made in favor of an arbitrary power in the judges, when no contest exists? It is a peculiar power, extra-judicial, and going to show that there is no discretion under the act, save what is given by positive and express terms. It is always to be presumed that the legislature when it entertains an intention will express it, and that, too, in clear and explicit terms: Dwarris on Statutes, 219. The most diligent and most bigoted inquirer cannot find in the act of 1887 anything which will show the grant of a discretion in the Courts of Quarter Sessions, such as was said to exist under the General License Law, applicable to the state of Pennsylvania, save the city of Philadelphia; for the act of April 14, 1859, P. L. 653, defines "that the several Courts of Quarter Sessions empowered to grant licenses shall have and exercise such discretion, and no other, in regard to the necessity of inns and taverns, as is given to said courts by the act relative to inns and taverns, approved March 11, 1834. If this proviso just cited can be held to be in effect as to other portions of the state, and is not repealed by the act of 1887, even then it could not apply to Philadelphia except by express re-enactment, as the proviso of the act said it should not apply to this city.

If it be sought to give by the case of Schlaudecker v. Marshall, before cited, an interpretation of this act, and to cover Philadelphia with its rule, it would be unjust and unfair, because, 1. The law in contemplation by that decision did not apply to Philadelphia. 2. If that law can be applied by previous re-

enactment and not repealed by act of May 13, 1887, it cannot apply to Philadelphia. 3. No prior law in force as to other counties of the state can be enforced in Philadelphia unless specially re-enacted. In other words, this enactment creates an entirely new system for Philadelphia.

7. How shall it be treated or enforced? Wisely, to meet the ends for which it was intended, or unwisely, to meet a spirit which however well intended, is not justified by legislation or authority, and results in destruction of property, infringement of liberty of action and disorganization of society? The act to restrain and regulate this traffic is generally known and termed the "High License Law," whereby it increased the license fee from fifty to five hundred dollars per year. It was thought this would reduce the number of houses licensed for the sale of liquor; and that this was the object to be achieved is evident from the fact that in the city of Philadelphia, which heretofore contained 6,000 licensed houses, there have been as applicants in the present year only 3,400. This is certainly a visible effect of the act, even if administered with the fullest liberality. Another object boldly and earnestly expressed by its most prominent advocates was that it was intended as a measure to raise revenue for the city of Philadelphia, which is plainly shown, as the act directs four fifths of the license fee to be paid into the city treasury for the use of the city, probably for the purpose of improving its highways and water supply, amounting to over a million and a quarter of dollars if the licenses applied for were granted.

8. Upon the question whether the application for a mandamus is the proper one there can be no doubt. The leading authority upon this subject may be regarded as Virginia v. Rives, 100 U. S. 323; Strauder v. West Va., 100 U. S. 304; Ex parte Virginia, 100 U. S. 339; Ferguson v. Earle of Kinnoull, 9 C. & F. 251.

OPINION, MR. JUSTICE PAXSON:

The petition in this case sets forth that the petitioner resides at No. 18 North Twelfth street, in the Ninth ward of the city of Philadelphia, and has for the last five years carried on the business of selling liquor at retail, at the said house, having been licensed to carry on said business in conformity with the

laws of this commonwealth heretofore existing; that being desirous of continuing said business, he presented his petition to the Court of Quarter Sessions, in conformity with the terms of the act of assembly of May 13, 1887, praying for a license to sell at retail vinous, spirituous, malt, or brewed liquors for the period of one year from June 1, 1888; that he has complied strictly and in every respect with said act, and that he possesses all the qualifications required thereby; that "no evidence, petition, remonstrance or statement of counsel, or of any other person whatever, being made or offered, or any objection of any kind being made against him or his said application, he was permitted to depart and was dismissed from any further hearing"; that on the second day of April, 1888, it was announced by the said judges of the said court that the said application or petition of the petitioner had been refused.

The petitioner prays this court "That the said judges of the said court of Quarter Sessions who heard his said application and petition, and who refused to grant the same, may be commanded, first, by an alternative mandamus, to show cause why the prayer of said petition or application should not be granted, and secondly, by a peremptory mandamus to do fully all that is required to be done by the said act, and justice."

The seventh section of the act of May 13, 1887, under which it is claimed it is the duty of the Court of Quarter Sessions to grant this license, is as follows:

"The said Court of Quarter Sessions shall hear petitions from residents of the ward, borough, or township, in addition to that of the applicant, in favor of and remonstrances against the application for such license, and in all cases shall refuse the same whenever in the opinion of the said court, having due regard to the number and character of the petitioners for and against such application, such license is not necessary for the accommodation of the public and entertainment of strangers or travelers, or that the applicant or applicants is or are not fit persons to whom such license should be granted; and, upon sufficient cause being shown, or proof being made to the said court, that the party holding a license has violated any law of this commonwealth relating to the sale of liquors, the Court of Quarter Sessions shall, upon notice being given to the person so licensed, revoke the said license."

Opinion of the Court.

It will be noticed that the petition does not aver that the judges of the Court of Quarter Sessions have neglected or refused to act upon his petition. His grievance is, that they *have* acted and have refused him a license. He now asks that they shall be compelled to show cause why his license should not be granted, and by a peremptory mandamus " to do fully all that is required to be done by the said act, and justice." We understand the prayer for relief to mean that if the judges cannot show that the petitioner has not complied with the act of 1887, or that a remonstrance has been filed, or an objection made by one or more citizens to the granting of a license to the petitioner, it is the duty of this court to issue a peremptory mandamus to the judges of the Quarter Sessions to compel them to grant such license. The petitioner assumes that he is entitled as a matter of right to a license, upon complying with the provisions of the act of 1887, in the absence of any allegation that he is an improper person to be so licensed. This is the fallacy which underlies his case, as well as the able argument of his learned counsel. He has no such absolute right, nor has any other man in the commonwealth.

It is not needed to review the license legislation of this state for the last half century. That was thoroughly done by Mr. Justice AGNEW in Schlaudecker v. Marshall, 72 Pa. 200. It is sufficient to say that prior to the act of 1887, the law was by no means uniform, there being many local acts in existence differing essentially from each other. In Philadelphia, any citizen could procure a license, upon payment of the license fee to the county treasurer. In some counties licenses were granted by the Court of Quarter Sessions, where in the opinion of the court the public accommodation required them. The whole history of our license system and the legislation attending it shows that the unrestricted sale of liquor has for a long time been regarded as a great evil. It is one which statesmen, and many earnest men and women, have been wrestling with from the organization of the government. When therefore the legislature came to enact the act of 1887, they were seeking to curb and regulate this evil. This clearly appears from the title of the act. It reads, " An act to *restrain* and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixture thereof." The mode of restraint

adopted by the legislature was twofold. One was, to increase the price of the license, by which many saloons would be closed and others rendered more respectable; the other was, to substitute the discretion of the Court of Quarter Sessions for the mere ministerial duty of granting licenses by county treasurers, as it had theretofore existed in Philadelphia and some other places. If the construction of the act contended for by the petitioner be the correct one, then the title of the act should read, "An act to *increase* the sale of liquor and to derive revenue therefrom." In other words, it would give every man in the state the right to sell liquor, who could pay for his license and comply with the act. This would do violence to its letter and spirit.

The petitioner begs the whole case, when he assumes that he has a right to a license because he is a respectable man, has always kept a respectable house, and that no remonstrances have been filed against him. It is an error to suppose that the sole duty of the court is confined to the inquiry whether the applicant is a citizen of the United States and a man of good moral character, etc. Back of all this lies the question whether the petitioner's house is "necessary for the accommodation of the public and entertainment of strangers and travelers," and the plain duty of the Court of Quarter Sessions, under the act of assembly, is to so exercise its discretion as to "restrain" rather than increase the sale of liquor. We do not know how many public houses there are in the Ninth ward; it is not material that we should. We are bound to presume that the judges below have ascertained the number in a judicial manner; that they have in like manner decided how many are necessary for the public accommodation. An investigation of this question has no particular bearing upon the petitioner's fitness to keep a saloon; it is a general one, with which he has no more legal concern than any other citizen of the Ward. The question is one of public concern; the petitioner is no party to it in the sense that persons are parties to private litigation. It may thus happen that licenses are refused to persons against whom there is no possible objection on personal grounds. Thus, if a ward has one hundred public houses where only fifty are required by the public wants, it is plain that fifty houses must be denied license although every one of

the applicants is a worthy man and keeps a respectable house, and though there be neither remonstrance nor objection on the score of want of fitness. The denial of a license under such circumstances may seem arbitrary. The trouble is, there are more persons who want to sell liquor than the legislature consider it for the public good to license for that purpose.

I will not consume time with an extended discussion of the right of the judges of the Court of Quarter Sessions to exercise their discretion in the granting of license. It has been exercised by that court almost time out of mind, and the power has again and again been affirmed by this court. This discretion, however, is a legal discretion, to be exercised wisely and not arbitrarily. A judge who refuses all applications for license, unless for cause shown, errs as widely as the judge who grants all applications. In either case it is not the exercise of judicial discretion, but of arbitrary power. The law of the land has decided that licenses shall be granted to some extent, and has imposed the duty upon the court of ascertaining the instances in which the license shall be granted. In order to perform this duty properly, the act of assembly has provided means by which the conscience of the court may be informed as to the facts; it may hear petitions, remonstrances, or witnesses, and we have no doubt the court may in some instances act of its own knowledge. The mere appearance of an applicant for license, when he comes to the bar of the court, may be sufficient to satisfy the judge that he is not a fit person to keep a public house. The judge is not bound to grant a license to a man whom he knows to be a drunkard or a thief, or has actual knowledge that his house is not necessary for the public accommodation. The object of evidence in such cases is to inform the conscience of the court, so that it can act intelligently and justly in the performance of a public duty. While the act of deciding in such cases is perhaps quasi-judicial, the difference between the granting or withholding of a license, and the decision of a question between parties to a private litigation, is manifest. Neither the petitioner nor any other person in this state has any property in the right to sell liquor.

It is needless to cite the numerous cases in which this court has refused to interfere with the discretion of the Quarter Sessions in regard to licenses. I will refer to Schlaudecker v.

Marshall, supra, which is upon all-fours with this, and where the question was raised upon an application for a mandamus to a board of licensers appointed under the act of May 10, 1871, giving to the said board "the same power and authority to grant licenses in the city of Erie as the Court of Quarter Sessions by law now has." The act then in force was that of March 22, 1867, the first section of which was substantially the same as the seventh section of the act of 1887, so far as the duties of the court are concerned. The petitioner there, as here, averred all that was necessary under the law to entitle him to a license, nor does any remonstrance appear to have been filed against it. The petitioner obtained a rule upon the board, to show cause why they should not grant his application. An answer was put in by the board in which, after specifying the number of applications, the number granted, and the number refused, they said: "The respondents answer and say that they claim it is not only simply their privilege, but an important duty enjoined on them by law, fully and carefully to examine every application for license, and when they are found to be in form according to the provisions of the act of assembly, that would constitute a prima facie case. Then it becomes the duty of the board, particularly when there are one hundred and thirty-four applications for license to deal out spirituous liquors in a city of a population of about twenty thousand, first, to see if the public interest required that number to be licensed; and, second, is the applicant a person of good repute for honesty and temperance? and, third, has he the necessary house room? These facts the board has to ascertain from evidence or personal inspection, and thereupon to judge and determine upon all the cases submitted to the board. These respondents claim that it is their duty, in discharge of an obligation they owe to the public, not to take the certificate of the twelve citizens as conclusive as to the necessity of the tavern or eating-house for the public accommodation, as to the honesty and temperance of the applicant, and as to his being provided with house room, but to examine into the matter, and upon a full and careful investigation to decide who shall have license and who shall not. These respondents did decree upon Mr. Schlaudecker's application and rejected it, and believe they acted in accordance with the law

in doing so." This court, in an elaborate opinion by Mr. Justice AGNEW, decided that, upon this state of facts, the writ of mandamus was properly refused. See, also, Toole's Appeal, 90 Pa. 376, as to the discretion of the court.

Were. we to grant the alternative mandamus now prayed for, it would result only in a return thereto by the judges of the court below that they have considered the application of the petitioner, and in the exercise of the judicial discretion conferred upon them by law, have rejected it. Under all our cases such a return would be conclusive, and it would lead to no profitable result to allow the writ.

It is therefore denied.