# In re People's Investment Company, Incorporated.

*Money lenders—License—Refusal of licenses—Discretion of court—Appeals.*

1. On an appeal from an order of the quarter sessions refusing a license for the business of lending money, as provided by the Act of June 5, 1913, P. L. 429, the appellate court cannot examine the evidence, but as the court below is required by the act to file an opinion on refusing a license, the appellate court may examine the opinion for the purpose of ascertaining the reasons or grounds of the decision, and it may reverse the order, if the reasons for refusing the license are not legal ones.

2. The power of the quarter sessions to grant or refuse a license for the business of lending money is a discretionary power, to be exercised primarily for the public good, and secondarily for the private interest.

3. An order of the quarter sessions refusing to a corporation a license for the business of lending money will be sustained, where it appears from the opinion of the court below that the corporation had illegally engaged in the business of lending money without a license after the passage of the Act of June 5, 1913, P. L. 429, that one of the directors had conducted the business of lending money at the same

place as the corporation proposed to conduct it, had charged enormous rates of interest, and had announced a purpose to collect the enormous charges that were outstanding.

Argued Dec. 4, 1913.   Appeal, No. 239, Oct. T., 1913, from order of Quarter Sessions Schuylkill Co., refusing a license for the business of lending money In re Petition of People's Investment Company, Incorporated. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Petition for license under Act of June 5, 1913, P. L. 429.

BECHTEL, P. J., filed the following opinion:

"This application was made under the Act of Assembly approved June 5, 1913, P. L. 429, and was filed August 8, 1913.   The application is regular on its face, and complies with the requirements of the act of assembly.   The bond tendered with the application is good.

Section 1, art. C, of the act of June 5, supra, provides, inter alia: "If, after hearing, the said court shall be of the opinion that the application is a proper one, they shall grant to the applicant a license to loan money in accordance with the provisions of this act for period of one calendar year from date of issuance of said license."

At the hearing it developed that A. W. Zerbey, one of the directors of the corporation seeking to be licensed, had been in charge of the premises and the business which the corporation proposes to now conduct and operate for some time prior to the filing of this application.   There is absolutely no doubt, under the evidence, that during his management of the business enormous rates of interest had been charged on loans, and that the business had been conducted in such a way as that no court of justice could give its sanction thereto. The president of the corporation informed the court

that the business was to be carried on under the supervision of this director. In addition to this, the director informed the court under oath that he proposed to collect those enormous charges that were outstanding. It further appears that the corporation has been doing business without a license up to the time of the hearing in violation of the provisions of the act of assembly. We do not, therefore, feel that this application is a proper one within the meaning of the act of assembly.

And, now, October 20, 1913, the application of the People's Investment Company, Incorporated, for a license as loan agent is herewith refused.

*Error assigned* was the order of the court.

*Henry J. Scott*, with him *C. E. Berger*, for appellant.

No printed brief for appellee.

OPINION BY RICE, P. J., February 20, 1914:

Clause (c), sec. 1, Act of June 5, 1913, P. L. 429, entitled, "An Act regulating the making of certain loans, limiting the charges therefor; requiring and regulating the licensing of lenders," etc., provides as follows: "If, after hearing, the court shall be of the opinion that the application is a proper one, they shall grant to the applicant a license to loan money, in accordance with the provisions of this act, for a period of one calendar year from date of issuance of said license. The said court shall be required to write an opinion in the event of refusing to grant a license to any such applicant." The act gives no appeal, in the broad sense of that term, from the decree of the court; but, as a new jurisdiction is created by the act, and the court exercising it proceeds in a new course different from the common law, an appeal having the effect of a certiorari lies. Such appeal does not bring up the evidence given on the hearing; but, as the court is expressly required to file

an opinion in the event of refusing the application, we assume that it was the intent of the legislature that it is to be examined by the appellate court for the purpose of ascertaining the reasons or grounds of the decision. We assume, also, that, if it appears thereby that the reasons for refusing the license were not legal reasons, or that the court proceeded upon an erroneous theory as to the nature and extent of its discretionary power, and as to the legal principles governing its exercise, the action of the court would be reversed and the record remitted with directions applicable to the particular case, according to the principles enunciated in Com. v. Shaffer, 52 Pa. Superior Ct. 230, and the cases there cited.

The act does not make it mandatory upon the quarter sessions to grant the license if only the application therefor be in due form and a sufficient bond be tendered. Its power and duty are to grant the license if it shall be of opinion that the application is a proper one. To enable it to form a just opinion, the statute requires that the applicant shall appear at the hearing and submit to examination and cross-examination, under oath, and provides that any person or persons who shall have filed a remonstrance, duly verified, five clear days before the hearing, shall be heard in opposition. Plainly, the power of the quarter sessions is a discretionary power, to be exercised primarily for the public good, and secondarily for the private interest. As was said in Schlaudecker v. Marshall, 72 Pa. 200, regarding the liquor license laws, so it may be as appropriately said here: The law of the land has imposed upon the court the duty of ascertaining the proper instances in which the license shall be granted, and therefore has given it to the court to decide upon each case as it arises in due course of law. The act of deciding is judicial, and not arbitrary or willful. "The discretion vested in the court is, therefore, a sound judicial discretion; and to be a rightful judgment it must be exercised in the particular case and upon the facts and circumstances before the

court, after they have been heard and duly considered; in other words, to be exercised upon the merits of each case, according to the rule given by the act of assembly. To say that I will grant no license to any one or that I will grant it to every one is not to decide judicially on the merits of the case, but to determine beforehand without a hearing or else to disregard what has been heard. It is to be determined not according to law, but outside of law, and is not a legal judgment, but the exercise of an arbitrary will." Many things may be considered by the court in determining whether "the application is a proper one." It would be beyond the legitimate scope of this opinion to undertake to enumerate all of them, but clearly the fitness of the applicant to conduct such a business, or, if the applicant be a corporation, the fitness of the persons who are to manage its affairs, is one of the first considerations. It had been demonstrated by practical experience that mere moral restraints were not adequate to protect the weak against the unconscionable exactions which, through their own necessities and the avarice and cupidity of lenders, had become common. Nor were the usury laws adequate. With the lessons of experience before it, the legislature deemed it necessary, in order to prevent continuation of the evils that had grown up under existing laws, not only to regulate the interest and brokerage fees that lenders might charge, but, also, to put the business thus regulated into the hands of proper persons. An interpretation of the law which would make it mandatory on the court to grant a license to one who had demonstrated, by his disobedience of the law, his lack of respect for its provisions, would render it weak and ineffective. What assurance is there that a corporation, which, in violation of the prohibitory and penal provisions of the statute, engaged in the business without having obtained a license, will conform to the other provisions of law if it is granted a license? Certainly, such conduct would be proper for consideration by the

court in passing upon a liquor license application, and, for the reasons already suggested, we entertain no doubt that it was proper for the court to take it into consideration in passing upon this application. The excuse given for this violation of law is not a valid excuse or even a palliation. In view of this significant conduct and the fact that the business of the corporation is to be conducted by one who previous to the passage of the act conducted the business of money lending at the same place, "charging enormous rates of interest," and who proposes to collect those enormous charges that are outstanding, the court committed no abuse of discretion in concluding that the application was not a proper one within the meaning of the act.

The order is affirmed.