## Chancellor Hall Corporation's Appeal

*Samuel D. Goodis*, for appellant.

*James Francis Ryan*, assistant city solicitor, for protestant.

*J. Myron Shimer*, Special Deputy Attorney General, for Liquor Control Board.

MILNER, J., February 27, 1945.—An appeal has been filed to this court from the order dated January 3, 1945, of the Pennsylvania Liquor Control Board refusing the hotel liquor license applied for by The Chancellor Hall Corporation for premises 204-06 South 13th

Street, Philadelphia. On the said premises, which are owned by applicant, there is erected a 24-story hotel building known as "Chancellor Hall". At the hearing before the examiner for the Liquor Control Board, the Department of Public Safety of the City of Philadelphia filed a protest against the issuance of the license, and its representatives appeared and testified that by reason of the excessive number of liquor licenses in the vicinity of Chancellor Hall the department had encountered a difficult situation in the enforcement of the law and the maintenance of good order. The board in its opinion supporting its order bases its refusal solely upon the protest of the Department of Public Safety. The relevant portion of the opinion reads as follows:

"The establishment proposed to be licensed now provides sleeping accommodations for transients as well as for a number of permanent guests. Although there is no dining room or kitchen in operation in the property at the present time, it is intended by the applicant to install the necessary restaurant facilities, and with a few alterations the establishment could, no doubt, be made to conform to the physical requirements prescribed by the law for hotel liquor licenses.

"However, the board is of the opinion that, by reason of the objections filed on behalf of the Department of Public Safety of the City of Philadelphia, no additional licenses should be issued in the central city area, it being obvious that there are, at the present time, more than sufficient licensed establishments to serve the needs of persons residing in that section of the city, as well as any of those who might have occasion to come into the central city area. The board, therefore, believes that the protests must be sustained and that this application for a new hotel liquor license should be denied."

The matter was submitted to this court upon the record before the examiner of the Liquor Control

Board, its opinion and order, and additional testimony presented before this court by representatives of the said Department of Public Safety and the applicant.

Section 403 of the Pennsylvania Liquor Control Act of 1933, as reënacted and amended by the Act of June 16, 1937, P. L. 1762, provides:

"Upon receipt of the application, the proper fees, and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, and the applicant seeks a license for a hotel, restaurant or club as defined in this act, the board *shall*, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, may, in its discretion . . . grant or refuse such new license or transfer if such place, proposed to be licensed, is within three hundred feet of any church, hospital, charitable institution, school or public playground, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oils: . . . " (Italics supplied.)

The said act in section 2 thereof defines a hotel as follows:

" 'Hotel' shall mean any reputable place, operated by responsible persons of good reputation, where the public may, for a consideration, obtain sleeping accommodations with meals, and which, in a city, has at least ten, and in any other place at least six, permanent bedrooms for the use of guests, a public dining room or rooms operated by the same management, accommodating at least thirty persons at one time, and a kitchen, apart from the public dining room or rooms, in which food is regularly prepared for the public."

The applicant contends that under the facts and the law in this case the Liquor Control Board is required to grant the hotel liquor license. In other words, it maintains that the use of the the word "shall" italicized in the above-quoted section 403 of the Pennsylvania Liquor Control Act is used in a mandatory sense. We are of the opinion from the facts set forth in the record that Chancellor Hall is a bona fide hotel within the meaning of the Liquor Control Act and that it is operated by reputable persons, and agree with the position taken by applicant.

Chancellor Hall cost about $1,800,000. It has 418 rooms for guests and over 200 bathrooms. All of its guest rooms were rented at the time of the hearing. It was obviously built for transient occupancy and not as an apartment house. Its suites consist of combinations of two rooms and bath or single rooms. Due to conditions brought on by the war people from out of town have taken accommodations in the hotel for indefinite periods under leases, but 81 furnished rooms offering full hotel service (maids, linens, etc.) to their occupants are available to the public when vacant.

It was testified that before the war there were many vacancies and the hotel was in financial difficulties, and it is desired to offer its guests full hotel service including restaurant and room service for meals and liquor, and it is also desired that it will be in a position to compete with the other hotels in the center of the city where it is located after normal conditions are restored at the end of the war. It operated a dining room without a liquor license before the war, but it was not a financial success. It has never had a liquor license and this is an application for a new license. There is a large room suitable for a dining room, on the first floor at the rear of the building which it is proposed to furnish and decorate at considerable expense. This room will seat about 85 persons. The bar will be in the rear portion of the first floor. There is space on the

premises for a kitchen. About $1,000 has already been spent on the decoration of the walls of this proposed dining room.

The board in its opinion concedes that Chancellor Hall "now provides sleeping accommodations for transients as well as for a number of permanent guests", and that as to the restaurant facilities, "with a few alterations, the establishment could, no doubt, be made to conform to the physical requirements prescribed by law for hotel liquor licenses." It is readily apparent, therefore, that Chancellor Hall, for which the license is sought is not only a hotel in fact but is one within the meaning of the Liquor Control Act. There is no question as to the financial responsibility of the applicant or the respectability of those in charge of the management. There are no churches, hospitals, charitable institutions, schools, public playgrounds or places where liquid fuels and oil are sold within 300 feet of the hotel.

The board bases its refusal upon the fact that there are an excessive number of licensed places in the immediate vicinity of the hotel. The Department of Public Safety is to be commended for its effort to keep down the number of such places in the congested central city district. A representative of the Police Department of Public Safety testified that there are 51 licensed places in the area two blocks square, bounded on the south by Spruce Street, west by Broad Street, on the north by Sansom Street and on the east by 12th Street. Chancellor Hall is approximately in the center of this area. They do indeed create a police problem. But the bar in this hotel will not be at the portion of the hotel fronting on 13th Street, but will be in the rear, and it and the restaurant or dining room are obviously intended as accommodations for guests of the hotel.

We are of the opinion that under the facts above related there is a mandatory duty upon the part of the board under the plain and unambiguous wording of the

Liquor Control Act to grant the license, and the fact that there are 51 licenses in the area above described does not, under the said act, justify the refusal of the license. See Larkin's License, 35 D. & C. 684 (1939), Yarosz's License, 47 D. & C. 404 (1943), and Cheris's Liquor License Case, 127 Pa. Superior Ct. 355 (1937).

By the Liquor License Quota Act of June 24, 1939, P. L. 806, the legislature limited the issuance of new liquor licenses. But in this act the legislature specifically provided that hotels were exempted from the quota requirements of the act. Section 2 of the act reads as follows:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels . . . "

The act is pari materia with the Liquor Control Act, supra, and the Beverage License Law of May 3, 1933, P. L. 252, and by section 3 thereof repeals all inconsistent acts or parts of acts. In section 1 of the said act a hotel is described as follows:

"The word 'hotel', as used in this act, shall mean any reputable place operated by a responsible person of good reputation, where the public may, for a consideration, obtain sleeping accommodations . . .

"(d) In municipalities having a population of one hundred thousand and more inhabitants, shall have at least fifteen permanent bedrooms for the use of guests. All such hotels shall have a public dining room or rooms, operated by the same management, accommodating at least thirty persons at one time, and a kitchen apart from the dining room or rooms in which food is regularly prepared for the public."

The City of Philadelphia falls within the category of subsection (d). The omitted preceding subsections

(a), (b) and (c) relate to municipalities of less population than Philadelphia.

It was not denied, and the record before us shows that it could not be denied, that the applicant, its operating officers and the premises for which the license application is made, meet all the requirements of the said Liquor License Quota Act, and that Chancellor Hall is a bona fide hotel within its meaning. Under the clear wording of this act hotels are excluded from the operation of the quota provision, and therefore the application for a new license for Chancellor Hall cannot be denied by the board upon the ground that there is an excessive number of licenses in the vicinity of the hotel, even though the quota for Philadelphia were exceeded.

The legislature has spoken in this matter and the question whether a liquor license should be granted and the circumstances under which it should be granted are primarily matters for legislative and not for judicial opinion: Schlaudecker v. Marshall et al., 72 Pa. 200; Spankard's Liquor License Case, 138 Pa. Superior Ct. 251. Appellant having met all the statutory requirements, the board had no discretion to refuse a new license to the applicant, and therefore the appeal must be sustained. We accordingly make the following

### Order

And now, February 27, 1945, it is ordered, adjudged and decreed that the appeal of the Chancellor Hall Corporation from the order dated January 3, 1945, of the Pennsylvania Liquor Control Board refusing a new hotel liquor license for premises numbered 204-06 South 13th Street, in the City and County of Philadelphia, is sustained and the said order is revoked. And it is further ordered, adjudged and decreed that this case be returned to the Pennsylvania Liquor Control Board for further consideration and the issuance forthwith to The Chancellor Hall Corporation of a new

hotel liquor license for said premises upon compliance with the rules and regulations of the said board pertinent thereto, the costs of this proceeding to be divided between appellant and appellee, each party to pay one half thereof.