## Appeal of Class & Nachod in the Matter of the Transfer of License at Morton and distribution of $2,000 paid into court.

*Transfer of license—Jurisdiction, Q. S.—Payment of money into court.*

The court of quarter sessions has no jurisdiction to order the payment into court of the proceeds of a proposed sale of a hotel as a condition to the approval of the transfer of the license, nor will the consent of all parties confer such jurisdiction.

*Appeals—Jurisdiction, Q. S.—Payment of money into court.*

On an application for transfer of license the court made the following order: "On paying into court $2,000, the balance of purchase money to abide the further order of court, the license may be transferred." Judgment creditors of the vendor united in petitioning for the appointment of an auditor to distribute the fund. After participating in the proceedings before the auditor certain creditors appealed, alleging want of jurisdiction in the quarter sessions to order the money into court. *Held,* that the whole proceeding must be regarded as a common law reference and that the appellate court will not review the decree of distribution made in such an anomalous proceeding, but will quash an appeal taken by a participating creditor. Queried: Whether the vendor might not have had the right to an appeal.

Argued Nov. 17, 1897. Appeal, No. 56, Oct. T., 1897, by Class & Nachod, from the order of Q. S. Delaware Co., transferring license upon the payment into court of $2,000, remainder of purchase money, to abide the further order of the court. Before Rice, P. J., Wickham, Beaver, Orlady, Smith and Porter, JJ. Appeal quashed.

It appears from the record of the auditor that Frank Schoener had a licensed hotel at Morton, Delaware county, that he became involved financially, was unable to pay his debts and confessed certain judgments on which executions were issued.

After levy was made an agreement was entered into by which Andrew Hayes agreed to purchase from Schoener the good-will, fixtures, furniture and license for $3,000, provided the court would approve of a transfer of the license; $1,000 was paid down, $2,000 was paid into court, and the transfer of the license allowed.

To this agreement execution creditors assented and stayed their executions.

The judgment creditors, including the appellants, subsequently united in a petition for the appointment of an auditor for the distribution of the fund paid into court. The auditor in making such distribution exhausted the fund before reaching the claim of the appellants, amounting to $2,150, who filed exceptions to the report of the auditor, which were dismissed by the court.

*Errors assigned* were to the dismissal of appellants' exceptions, reciting same, which assigned error in the scheme of distribution reached by the auditor, and especially (14) The court of quarter sessions has no jurisdiction over the fund.

*W. Roger Fronefield*, for appellants.—Want of jurisdiction may be shown in the appellate court even where the question was not raised in the court below: Hill v. Tionesta Twp., 129 Pa. 525.

The balance of appellants' argument was directed to the merits of the case as to the distribution reached by the auditor, which, not being considered by the Superior Court, need not be set out here.

*Wm. F. Johnson*, with him *Charles H. Pile*, for appellees.—It is not true that the court directed the money to be paid into the court of quarter sessions. It was a suggestion to pay "into court"—"where, if there were any disputes as to ownership, the same could be judicially determined." As a matter of fact it was paid to the prothonotary, but was considered by all the parties as being in the quarter sessions. The appellants, being the only parties objecting to the transfer, particularly and solely invoked it, and there was common consent. The court took jurisdiction by reason of that invocation and common assent, nobody objected at any stage of the proceedings, and it is too late now to raise the question of jurisdiction.

OPINION BY WICKHAM, J., December 13, 1897:

Frank Schoener was a licensed innkeeper who owed more than he could pay. A number of his creditors, including the

appellants, were pursuing him with executions. In this emergency, one Andrew Hayes came forward and agreed to buy Schoener's lease of the hotel, together with the personal property used in and about the premises, agreeing to pay therefor $3,000, if a transfer of the license could be obtained, otherwise the contract to be void. One third of the purchase money was to be paid in five days, and a note at three months given for the remainder, all moneys paid to be returned if the agreement were not consummated.

When application was made to the court of quarter sessions for the transfer, the appellants protested against its being allowed, this evidently with the sole view of securing some of the proceeds of the sale on their judgment, which stood at the foot of the list, but on which they had previously issued an attachment execution, to reach the moneys in Hayes's hands. Finally an amicable understanding seems to have been reached between all parties in interest, that the objections to the transfer should be disregarded, and that $2,000 of the purchase money should be paid into the court of quarter sessions. The court assented to this arrangement, and made the following order, to wit: " On paying into court $2,000, remainder of purchase money, to abide further order of court, the license may be transferred." It will be observed that this is not an order specifically directing the money to be paid into court, but an allowance of the transfer in case the money were so paid.

On October 6, 1896, the day after the making of the order, the money was paid to the clerk, and thereupon the appellants united with the other judgment creditors of Schoener in petitioning the court to appoint an auditor to distribute the fund, which was accordingly done. The appellants made a vigorous effort to secure, through the audit, a part of the money, but being unsuccessful, took their appeal to this court, and assigned for error, inter alia, that the court below had no jurisdiction over the fund. This is quite true, but it is a sword which cuts both ways, and to say the least, the objection comes with an ill grace from the appellants, particularly at this late day. The quarter sessions, as such, of course had no right to order the money into court, nor could the counsel for the parties interested, by any agreement they might make, give that tribunal a jurisdiction it possessed neither at common law, nor by statute. As well

might they have gone into the orphans' court to settle their disputes respecting the distribution of the proceeds of the sale of the hotel, as to attempt to use the machinery of the court of quarter sessions for the same purpose. It was never contemplated that the latter tribunal should be called on to adjust such controversies, or be employed to collect claims of which the common pleas only has cognizance.

The whole proceeding must be regarded as being in the nature of a common-law reference. That the learned judge of the court below shared somewhat in this view, is perhaps inferable from the fact that he made no absolute order, as said before, to pay the money in, and the further fact mentioned in the testimony of one of the counsel, that he suggested that all parties in interest should join in the petition for the appointment of the auditor.

The appellants and the other claimants to the fund created a court of their own for the settlement of their differences. Properly viewed, the auditor, at the most, was only a common-law referee, deriving his powers entirely from the agreement and consent of those who secured his appointment, and voluntarily submitted their claims to his arbitrament.

Schoener who, by the way, is not here complaining, was not compelled to pay the money into court, but he chose to do so at the instance of the court and his creditors, so as to obtain a larger price for his hotel property, by having the license go therewith. The appellants were not summoned or cited into the quarter sessions, and were not bound to take any part in the proceedings had there. They still had their original rights and remedies, whatever they were, on their judgment in the common pleas, unless they chose to renounce them. They took their chances before the auditor, and we cannot help them.

By way of illustration, let us suppose that A, in consideration of B, C, D, and E, his creditors, withholding or withdrawing objections to a decree for which he is asking in the orphans' court, at their instance and on the judge's order, pays $2,000 to the clerk for the benefit of the creditors, whose intermeddling results solely from their supposed discovery of a new way to collect old debts. The court then at the request of these creditors appoints an auditor to determine their respective rights to the money. It will hardly be contended that this court can or

, should review the decree of distribution made in such an anomalous and unauthorized proceeding. An appeal by the party, paying in the money, from the order directing its payment, might stand on a better footing. In Harbison v. Gilliland, No. 217, October and November term, 1886, a case decided by the Supreme Court at Pittsburg, but not reported, it appeared that in a sheriff's interpleader the parties in interest assented to the appointment of an auditor, and made their fight before him, instead of having an issue framed and trying the case before a jury, as provided by statute. The court refused to interfere, and quashed the writ of error. We are constrained to pursue the same course in the case at bar.

Appeal quashed.