## Keiper's License.

*Liquor law—Transfer of application—Time of filing application—Advertisement.*

Where an applicant for a liquor license, pending the hearing of a remonstrance against him, transfers all his right in the application to another, and the transferee files an application, but within the three weeks prior to the day fixed by order of court for the hearing of applications, and the transferee's application has not been advertised, the court is without power to grant the license. In such a case the transfer of the

application cannot be considered as a transfer of a license, nor can the application of the transferee be considered as an amendment of the original petition. The statutory requirements as to filing three weeks before time for hearing and as to advertising are mandatory.

Argued Oct. 6, 1902. Appeal, No. 44, Jan. T., 1903, by Frank P. Meckas, from order of Q. S. Monroe Co., granting liquor license in In re Keiper's Liquor License. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Petition for liquor license.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was order granting license.

*Charles B. Staples*, with him *Wilton A. Erdman*, for appellant.—The principle is well established that where the jurisdiction of a court is statutory, he who asks for a decree must be able to point to the written provisions that justify action, either by expression, or necessary implication. In this case the attention of the court was not directed to any provision for the transfer of a license application, nor is there any such provision, and it is, therefore, urged that the action of the court was without sanction of law.

In cases similar to the present one where an effort has been made to escape the results of the illegal acts of a licensee by requesting the court to grant the license on condition that it be immediately transferred to a proper person, the courts have refused to issue the license: Forest House License, 5 Northampton, 17 ; Howell's Application, 10 Pa. Dist. Rep. 504 ; Cronin v. Sharp, 16 Pa. Superior Ct. 76.

The courts have uniformly held that a license application, after it had been filed, cannot be amended in a material matter: Sherry's License, 12 Pa. C. C. Rep. 119 ; Donnoyer's License, 9 Pa. C. C. Rep. 303.

*Harvey Huffman*, with him *W. B. Eilenberger*, for appellee.— The granting of licenses in Pennsylvania by the courts of quarter sessions is made to the place and not to the person. The necessity for the hotel is the primary and controlling ele-

ment moving the court in each instance: Burns' License, 3 Pa. Dist. Rep. 429; Justin's Application, 2 Pa. C. C. Rep. 22; Application of Keifer et al. 2 Pa. C. C. Rep. 40; O'Brien's License, 1 Pa. C. C. Rep. 363.

If the assignment made by Jesiah Keiper were considered by the court as an amendment, the court had the discretion to allow such amendment: Miller's License, 13 Pa. Superior Ct. 272.

The granting of the license in this case to Reuben Keiper was a matter of discretion with the court: McOmber's License, 3 Pa. Dist. Rep. 431; Summa's License, 2 Pa. Dist. Rep. 651; Breen's License, 2 Pa. Dist. Rep. 652.

The granting of the license in this case to Reuben Keiper was a matter of discretion with the court. The court having first determined the necessity for the hotel at this place, the only thing further required was to satisfy the court that the outgoing license would be held by a proper and fit person. Its discretionary power was exercised. The court fully considered the whole case, even allowing the remonstrance to put on the stand witnesses against Jesiah Keiper, the original applicant. The court did this so that the whole matter could be gone into by all the parties, and as we have a right to assume, to discover whether the rights of the public could best be subserved by the granting or refusal of this license.

Where the court finds that the house applied for is necessary for the accommodation of the public, it will not permit an applicant for a hotel license, who has been reported to the court as an unfit person to be intrusted with a license, to withdraw his petition on the day of hearing, so as to effect the granting of license to the house, in case the proper person shall make application for any portion of the license year.

In such case the license to the applicant may be refused, but the petition directed to remain among the files to show authority for warranting the court during the license year to grant a license to the petitioner's successor if the same shall appear proper: Heilig's License, 2 Pa. Dist. Rep. 342; Umholtz's License, 191 Pa. 177; Russell's License, 1 Pa. Dist. Rep. 267.

OPINION BY W. D. PORTER, J., December 13, 1902:

Jesiah Keiper, on February 20, 1902, filed with the clerk of the court of quarter sessions of Monroe county, his petition in proper

form praying that a license be issued to him to sell liquors at retail. This application was duly advertised, and on March 17, 1902, a remonstrance was filed against the granting of said license, alleging that the applicant had during the previous year violated the liquor laws of the state by selling on Sundays and to minors, and that he was an unfit person to have a license. The hearing upon the application of Jesiah Keiper was, on April 1, continued until April 19, 1902. On April 9, 1902, Jesiah Keiper filed of record a paper stating that he did, "for a valuable consideration assign, transfer and set over to Reuben Keiper," all his right, title and interest in said application. Upon the same day Reuben Keiper presented his petition "for the transfer of application of a license to sell vinous, spirituous, malt and brewed liquors and admixtures thereof, in compliance with the act of assembly of May 18, 1887, in quantities not exceeding one quart;" which petition contained the averments required, in original applications for a license, by the provisions of the act under which it purported to be filed. The petition of Reuben Keiper was not advertised. The court, on April 19, 1902, without disposing of the original application of Jesiah Keiper, granted a license to Reuben Keiper. The appellant was one of the remonstrants in the court below.

The Act of May 13, 1887, P. L. 108, prohibits the sale of liquor by retail, unless a license therefor shall have been obtained in the manner by that statute provided. The statute confers upon the court of quarter sessions jurisdiction to grant licenses, but the limits of that jurisdiction and the manner in which it is to be exercised are distinctly defined by the statute. Licenses shall only be granted to citizens of the United States of temperate habits and good moral character. When the preliminary conditions have been complied with, it is the duty of the court to grant a hearing upon the petition, and the right to that hearing is given not only to the applicant, but to the residents of the ward, borough or township, both those who favor and those who remonstrate against the application for such license. "Whenever, in the opinion of the court, having regard to the number and character of the petitioners for and against such application, such license is not necessary for the accommodation of the public and entertainment of strangers or travelers, or the applicant or applicants is or are not fit persons to whom such license should

be granted," the express mandate of the law makes it the duty
of the court to refuse the license.    An applicant is not entitled
to a license as a matter of right, on the ground that he has com-
plied with the provisions of the act and no remonstrance has
been filed against his application : Raudenbusch's Petition, 120
Pa. 328.    The matter is one of public concern; the necessity
of the house for the accommodation of the public, the fitness
of the applicant and the effect upon the public order and peace
of the community, reasonably to be apprehended from the grant
of a license to that particular applicant at the place designated,
are all to be considered.    The lawmaking power while imposing
a duty upon the court, provided means by which the conscience
of the court might be informed as to the facts having a direct
bearing upon the result dictated by a proper discharge of that
duty.    The legislature did not merely give the court power to
obtain the infomation but it gave to the residents of a neighbor-
hood, to be affected by the proceeding, the right to impart the
information, and in order that this right might not be defeated,
the statute embodied provisions which were intended to assure
notice of every essential element of the application and the time
when those interested might expect a hearing.    The 3d sec-
tion of the act provides that all licenses shall be for one year,
from a date fixed by rule or standing order of the court of
quarter sessions.    " The said court shall fix by rule or standing
order a time at which applications for said licenses shall be heard,
at which time all persons applying or making objections to
applications for license may be heard by evidence, petition, re-
monstrance or counsel."    When the court has complied with
this mandate of the statute, and by rule fixed the time when
license applications are to be heard, that rule has the binding
force of positive law, and is to be read into the statute from
which the court derives its jurisdiction to grant any license.
Such a rule can only be suspended or superseded by the adoption
in an orderly manner of a general rule or standing order fixing
some other time for the hearing of all applications.

The 4th section of the act requires every person apply-
ing for a license to file his petition with the clerk of the court
of quarter sessions, at least three weeks before the first day of
the session of the court at which the same is to be heard.    The
act and its supplement impose upon the clerk the duty of pub-

lishing, prior to the time fixed for hearing, a list containing the names of all such applicants, their respective residences and the place for which such application is made. The court must fix the day of hearing, every application must be filed three weeks before the first day of the session of the court at which the same is to be heard, and the clerk must publish the list during the period prescribed by the statute, prior to the time of hearing. These provisions are for the purpose of making certain that the public shall have notice of the time when these matters of public concern are to be heard and disposed of by the court. The requirement, that every application for the grant of a license shall be filed three weeks before the first day of the session at which the same is to be heard, is mandatory. When the applications are not so filed it is impossible for the clerk to perform the duty imposed upon him by the statute, and the manifest intention of the legislature that the public shall have notice must be defeated. The statute contemplates notice of the identity of the proposed licensee as well as that of the place where the business is to be carried on, and the courts have no authority to permit any substitution or transfer of the application which will defeat the legislative intent.

The court of quarter sessions of Monroe county had by standing rule fixed the fourth Monday of March in each and every year as the time at which applications for licenses should be heard. The petition of Reuben B. Keiper for a license had not been filed three weeks before that day. " Whether any or all licenses shall be granted is a legislative, not a judicial, question. Courts sit to administer the law fairly, as it is given to them, and not to make or repeal it:" Schlaudecker v. Marshall, 72 Pa. 200. The source from which the court below derived any power which it had in the premises was the act of 1887; the appellee had not complied with the provisions of that statute, he had no right to be heard upon his application, and the court had no authority to grant him a license as upon an original application.

The order of the court below cannot be sustained as a transfer of a license. There can be no transfer of a license unless as expressly authorized by an act of assembly: Petition of Babetta Blumenthal, 125 Pa. 412. The only authority for the transfer of a license is to be found in the Acts of April 20, 1858, sec. 7, P. L. 365, and July 15, 1897, P. L. 297, in each of which

provision is made for the transfer of licenses after they have been granted. A license may be transferred before it has been taken out and paid for, but there must have been a grant of the right to take it out. The court must have performed its whole function by granting to the applicant the right to have the license; when this has not been done there is nothing to transfer: Umholtz's License, 191 Pa. 177.

The argument of the appellee that the judgment of the court of quarter sessions may be sustained upon the theory that the petition of Reuben Keiper is to be treated as an amendment of the original petition of Jesiah Keiper, is without foundation. There is no statute which would authorize an amendment of this character, nor can it be sustained under the discretionary power of the court. Even if the court had discretion to permit amendments in proceedings of this character, that discretion must be exercised according to law, not outside of law, and in such a manner as to defeat the clearly defined purpose of the statute from which the court derived its jurisdiction: Schlaudecker v. Marshall, supra. "Where anything is left to any person to be done according to his discretion the law intends it must be done with a sound discretion and according to law: " 1 Tomlin's Law Dict. title, "Discretion." Considered as an amendment, the effect of the new petition was to change the whole purpose of the proceeding. The original petition sought a personal privilege for Jesiah Keiper; his fitness was an element upon which the court would have been required to pass under that petition; the petition which it is now attempted to substitute was for the purpose of obtaining a personal privilege for another man, who grounded his right upon his own personal qualifications. If this could be permitted, then a man who had a reputation for high moral character and unquestioned fitness might file an application for a license and, the publication of his name having misled the public and prevented a remonstrance, he could prior to the hearing turn over his application to a disorderly and intemperate person of whose intention to apply the public had no notice. We are of opinion that the court fell into error when it granted this license.

The order of the court of quarter sessions is reversed and it is now ordered that the appellee pay the cost of this appeal.