## Wolongevicz, Appellant, *v.* Stegmaier Brewing Company.

*Liquor law—Transfer of license—Payment of transferer's debts —Rule of court—Husband and wife.*

Where a wife who owns the real estate on which her husband conducts as licensee a retail liquor business, agrees to sell the land under an oral contract that the grantee is not to pay the purchase-money until the license is transferred to him, the Court of Quarter Sessions has no jurisdiction in granting the petition to transfer, to direct without the knowledge of, and against the consent of the wife, that a portion of the purchase-money shall be retained to pay the debts of her husband to certain brewing companies; and this is the case although a rule of the Quarter Sessions provided that no transfer of a liquor license should be allowed until provision had been made for the payment of debts contracted under the license.

Where in such a case the money retained by the purchaser has been paid into court, the Quarter Sessions has no jurisdiction to award a feigned issue between the wife and the brewing companies to determine the ownership of the fund.

Argued March 1, 1915. Appeal, No. 23, March T., 1915, by plaintiff, from judgment of C. P. Luzerne Co., Feb. T., 1913, No. 286, on verdict for defendants in case of Marcella Wolongevicz v. Stegmaier Brewing Company and the Susquehanna Brewing Company and Michael Wolongevicz. Before RICE, P. J.; ORLADY, HEAD, KEPHART and TREXLER, JJ. Reversed.

352, (1915).] Assignment of Errors—Opinion of the Court.

Feigned issue to determine ownership of money paid into court. Before BOYLE, P. J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in granting the interpleader issue, and in entering judgment on the verdict for the defendants.

*Q. A. Gates,* for appellant, cited: Blumenthal's Petition, 125 Pa. 412; Grimm's Est., 181 Pa. 233; Meehan v. Owens, 196 Pa. 69; Paul v. Kunz, 188 Pa. 504; Barto's App., 55 Pa. 386; Best v. Smith, 193 Pa. 89; Harlan v. Maglaughlin, 90 Pa. 293; Snyder v. Christ, 39 Pa. 499; Townsend v. Maynard, 45 Pa. 198; Westmoreland B. & L. Assn. v. Thomas, 207 Pa. 513; Savits v. Speck, 21 Pa. Superior Ct. 608.

*Wm. J. Goeckel,* with him *Edward A. Lynch,* for appellees.

OPINION BY ORLADY, J., April 19, 1915:

This case presents such an unusual procedure that the facts are stated in greater detail than is usual in appellate review.

In November, 1901, Marcella Wolongevicz became the sole owner by a fee simple title of two contiguous parcels of ground in Nanticoke, on which then was a building having a hotel license. Her deeds for the property were duly recorded. This hotel had been regularly licensed to sell liquor from 1897 to 1905, at which time a license was granted for the hotel to Michael Wolongevicz, husband of Marcella, and he conducted the place as a licensed hotel until July 22, 1912, when the property was sold by her to Lawrence Kurtulis for $8,000, under "an oral agreement that the money was not to be paid over to Marcella, until such time as the license of Michael was transferred by the License Court of Luzerne County

to Lawrence Kurtulis, and the deed delivered." A title search was made by counsel for Kurtulis who also prepared a petition for the transfer of the license. The deed was executed by Marcella, the record owner of the title, and joined in by her husband, Michael. On the hearing of the application for the transfer of the license, a remonstrance was presented by counsel for the Susquehanna Brewing Company, Stegmaier Brewing Company, and the Reichard & Weaver Brewing Company, who protested against the transfer of the license, unless and until, their respective claims of $942.35, $130 and $33.00, against Michael, were deducted from the purchase-money price agreed to be paid by Kurtulis to Marcella. The amount of the claims was disputed by Michael, when the license court postponed the hearing of the cause to an hour later in the day, "to allow the parties to get together and adjust the amount of the bills." After further hearing before the court the remonstrance was withdrawn, the license was transferred to Kurtulis, and by direction of the license court the sum of $1,205 was retained by Chas. A. Shea, Esq., counsel for Kurtulis, as a stakeholder for the claims against Michael. Marcella Wolongevicz did not know of this arrangement, was not in court, nor was she represented by counsel. None of the personal property of Michael in the hotel was sold to Kurtulis or represented any part of the $8,000.

As testified to by Mr. Shea, "The entire transaction as it was carried on in my office was the sale of this real estate, and the transfer of the license was to follow with it. I asked them how about the stock and fixtures in the way of personal property for the purpose of preparing a bill sale. Kurtulis said he was not going to purchase anything of that, that if he would, he and Michael would fix it up between them, and I drew no bill of sale." Mr. Shea further testified, "I knew it was the practice, on a transfer of a license that if there was a consideration entering into the transfer, that, that trans-

fer was to be appropriated to the payment of the debts of the licensee in so far as they would reach."

On December 23, 1912, after several demands on Mr. Shea had been refused, Marcella brought suit against him to recover the balance of the money in his hands; he having paid to her or on her order $6,895 of the $8,000 purchase-money which he recovered from Kurtulis, when the deed for the property was delivered and the license was then transferred.

Suits were brought by the brewing companies against Michael, defended by him, and are yet undecided. Other claims were in dispute and suits thereon were threatened, so that on January 14, 1913, Mr. Shea, to relieve himself from liability and further trouble as a stakeholder, received leave to pay the said $1,105 into court. Thereupon the two brewing companies intervened as claimants on the fund, when a feigned issue was awarded in which Marcella was named as plaintiff and the Stegmaier, Susquehanna and Pennsylvania Central Brewing Companies were named as defendants, "To determine the right of property in said fund." On the trial of that feigned issue the verdict returned by the jury was, "that the money in court is the property of Michael Wolongevicz, and we find in favor of the defendants in the following proportions: Stegmaier Brewing Company, $130, Susquehanna Brewing Company, $858, on which judgments were entered and from which this appeal is taken.

The first error in this record, was in granting the interpleader issue, and the last, was in entering judgment on the verdict returned by the jury.

There is nothing in this record to indicate that Marcella Wolongevicz was not legally entitled to the whole of the consideration for her real estate. There was no lien or claim against it, and the theory that the good will of the hotel conducted by the husband and the license connected with it, "were inseparable incidents of the place of business, and had a value as an asset and property of Michael," so that his creditors could seize a part

of the purchase-price, is without any support in law or equity under the facts.

The rule of court involved, as stated by the judge, "Was promulgated on June 7, 1913, but in force for some considerable time before that; and it was the practice of the court to hear claims in opposition to transfers,— refusing transfers unless creditors of a transferring licensee were notified and reasonable provisions were made for claims arising from the conduct of the particular business"—and is as follows:

No. 1.    No license shall be transferred without proof of compliance with the Act of 1905, relating to sales in bulk and payment or provision for payment of debts contracted under the license, except when the transfer is asked under proceedings in bankruptcy" and is without any warrant in law for its enforcement under the facts presented by this record.

The court suggests that because "Marcella obtained benefits that resulted from the transfer upon the conditions imposed, and is therefore bound in common honesty to pay the claims in accordance with the representations that were made in court when the transfer was obtained." The objection to this, lies in the admitted fact that Marcella was not in court or represented by counsel when the transfer was made, and as soon as she learned of it she denied any such assent; and further, that the debtor himself denied the liability claimed, and has since then successfully resisted the demand.

Before the trial of the feigned issue, on the application of the two brewing defendants against the objection of Marcella, and without notice to Michael, the record was amended by making Michael a codefendant with them and after being brought in on a subpœna, he was called by the other defendants as if under cross-examination, to establish the amount of the claims of the brewing companies against him. After frequent objection by counsel for Marcella, and Michael, the trial judge stated, "I do not think we are trying the title to the property. I

think the question here is, whether the debts claimed are due and what disposition will be made of this money that is held by the stakeholder."

Amending the record and calling of Michael as if under cross-examination is defended by the court in the opinion filed, viz: "In a proceeding to ascertain the amount of his debt, in order that it might be paid out of a fund in court as a result of this interpleader, he was a proper and indeed a necessary party. He could give no evidence adverse to his wife's title to the property, and, in fact, he gave none. The proceeding being in its nature equitable, all persons interested in the questions of fact and law involved in the litigation would be proper parties." His debt was not being adjudicated in a proper manner. His testimony was used adversely to the claim of his wife, and against her interest. He was denying liability for the claims, and she was demanding the whole of the purchase-money. The sole purpose was to fix the amount that the wife's property was to be made liable for the debt of the husband.

In Class, et al., Transfer of License, 6 Pa. Superior Ct. 130, in a somewhat similar case, we said: "The Quarter Sessions, as such, of course had no right to order the money into the court, nor could the counsel for the parties interested, by any agreement they might make, give that tribunal a jurisdiction it possessed neither at common law, nor by statute. As well might they have gone into the Orphans' Court to settle their disputes respecting the distribution of the proceeds of the sale of the hotel, as to attempt to use the machinery of the Court of Quarter Sessions for the same purpose. It was never contemplated that the latter tribunal should be called on to adjust such controversies or be employed to collect claims of which the Common Pleas only has cognizance." The court in that case at the request of creditors appointed an auditor to determine their respective rights to the money. This court, by WICKHAM, J., said, "It will hardly be contended that this court can or should

review the decree of distribution made in such an anomalous and unauthorized proceeding." We quashed the appeal for the reason that the appellants and the other claimants to the fund created a court of their own, for the settlement of their differences. Properly viewed, the auditor, at the most, was only a common-law referee, deriving his powers entirely from the agreement and consent of those who secured his appointment, and voluntarily submitted their claims to settlement." In the case before us there was no agreement, but a continuing protest by Marcella and Michael as to the disposition of the claims against him.

In Blumenthal's Petition, 125 Pa. 412, it is declared, "The privilege (to sell liquors), however, is personal and is not assignable, nor does it go to the personal representative in case of death. It follows, therefore, that a license cannot be transferred, unless expressly authorized by act of assembly and in the mode therein prescribed": Grimm's Est., 181 Pa. 233; Keiper's License, 21 Pa. Superior Ct. 512.

In Cronin v. Sharpe, 16 Pa. Superior Ct. 76, we held, an assignment of a license is nothing more than an expression of consent that the license may be transferred to the assignee by the authority granting the same, all that the assignee acquires by it is the privilege of applying for the transfer to the court having jurisdiction to make it. The subject-matter of the contract could not have market value. Such a right cannot have any other than a purely speculative value for the reasons that,— first—the right to a license or transfer of a license is not assignable; second—neither party in interest could to any degree affect the decision of the license court, and this action could not be anticipated.

In Barto's App., 55 Pa. 386, an effort was made to charge a wife's land with a debt contracted by her husband for improvements, and it was held to be a sufficient defense that the improvements were made against her consent, the court saying, "if a married woman's real

estate is to be charged for improvements, they must be such as she authorizes and consents to, not such as an insolvent husband or other volunteer may make against her consent. Her objections may be feigned and insincere, but there is no proof that they were so; and assuming that they were in good faith, it is hard to see what more she could have done to protect her estate from an unwilling encumbrance."

The analogy is a fair one in this case, where the wife resists the attempted lien at every step of the proceeding, and denies all liability for a debt which the law says she may not even become a surety for.

To sustain such a proceeding could result in a licensee very seriously affecting the value of his landlord's estate by incurring debts as a licensed dealer and make the landlord his surety before the property could be rescued from his control. Such a system would extend a fictitious credit to the licensee and might as well apply to any other claims for supplies or furnishings as to those of the liquor dealers. The creditors of Michael had no standing as remonstrants. The acts of assembly which define the manner in which licenses may be transferred, do not authorize the license court to adjudicate the claims against the licensee. The legal discretion vested in that court is confined to the matters which are set out in these statutes. It follows that the consideration of these claims was without legal warrant, and the court was without jurisdiction to make or enforce a rule of court that would, under the admitted facts of this case, affect the title of Marcella to the purchase-money of her real estate.

The money should have been paid to the admitted owner of the real estate. The interpleader issue should not have been awarded. The judgment is reversed, and the costs of the proceeding and of this appeal are to be paid by Stegmaier Brewing Company and the Susquehanna Brewing Company in the proportion of the verdicts recovered by them.