## Fogal v. Swart, Appellant.

*Easement—Building inspection—Extinguishment of easement—Statute of frauds.*

A parol agreement between the owners of servient and dominant tenements will not extinguish a servitude created by deed; this can be only by deed or note in writing, or operation of law.

Where the plaintiff in a bill in equity asserts against the defendant a building restriction line established by the former owner of the lots of the plaintiff, the defendant and others, the defendant cannot avoid the restriction by proof that plaintiff's vendor had verbally assented to the abolition of the building line, and had subsequently signed an agreement in which all the lot owners joined agreeing to its abolition, if it appears that such agreement was signed by the son of the vendor, without authority, verbal or written, and was not called to the attention of the father until after the date of the deed to the plaintiff.

Argued April 27, 1908. Appeal, No. 220, April T., 1908, by plaintiff, from decree of C. P. No. 3, Allegheny Co., May T., 1907, No. 9, on bill in equity in case of W. T. Fogal v. Wm. M. Swart. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed.

Bill in equity for an injunction.

Swearingen, P. J., found the facts to be as follows:

1. Milton I. Baird, the owner of a tract of land in Scott township, Allegheny county, Pennsylvania, laid the same out into a plan of lots called "Espy Farm," which was duly recorded on July 1, 1901, in the recorder's office of said county of Allegheny, in Plan Book, vol. 18, p. 186. In said plan there is a street thirty-three feet in width, called Banksville avenue, upon which eighteen lots front on the westerly side thereof, numbered one to eighteen, inclusive. Said Milton I. Baird established building lines along the streets of said plan, among others a building line thirty feet from the westerly side of said Banksville avenue, parallel therewith, which building line is marked upon the record of said plan. There is also indorsed upon the record of said plan the following viz.:

"There is annexed to each lot as an easement appurtenant to it the free right until April 1, 1920, of light, air and prospect unobstructed by anything save trees, shrubs, plants, fountains, statuary, other ornamental structures not over ten feet high intended for ornament merely, open porches not over fifteen feet wide with or without roofs, combs, steps, fences and such other projections from dwelling houses not materially interfering with light, air or prospect, as are or shall be usual or frequent and reasonable, over all the parts of the other lots fronting on the same street lying outside of the building line designated."

Prior to January 29, 1907, no buildings or other structures were erected on the lots in said plan fronting on Banksville avenue in violation of said building restriction.

2. On October 20, 1905, William M. Swart, the defendant, purchased the lot No. 1 in said plan from William J. Payne et ux., who had purchased the same from said Milton I. Baird by deed dated October 5, 1905, which conveyance was made subject to the building line and to all building or other restrictions set forth in the explanation indorsed on the record of the plan aforesaid. Said lot fronts forty-eight feet on the westerly line of Banksville avenue, and thence runs back westerly 120 feet, narrowing to sixteen feet in the rear. The defendant also owns the two lots adjoining No. 1, and his residence occupies the rear half of said lot No. 1.

3. On or about January 29, 1907, the defendant commenced the erection of a frame store or business building upon that portion of said lot No. 1, which fronts on Banksville avenue. This building is thirty feet by fifty feet. It stands back about two inches from the side line of Banksville avenue and occupies in depth the entire easement upon said lot No. 1. The building has no cellar and is set upon posts. It was weatherboarded and under roof on February 4, 1907, and some work within was then commenced. The lot stood seven or eight feet above the grade of the street, and a few months before this time the defendant had leveled off the front portion of lot No. 1 for this building, but had made no excavation below the level of the street.

4. From September 21, 1905, to February 4, 1907, D. R. Speer had been the owner of lot No. 11 in said "Espy Farm" plan, which fronts forty feet on the westerly side of said Banksville avenue and extends back westerly 120 feet to an alley. By deed dated February 4, 1907, recorded in the recorder's office of said county, in Deed Book, vol. 1536, p. 147, D. R. Speer and wife conveyed said lot No. 11 to W. T. Fogal, the plaintiff, which deed contained the following:

"This conveyance is made subject to the building line and to all building and other restrictions set forth in the explanation endorsed on the record plan above mentioned and referred to."

The consideration for this deed was $900, $250 of which was paid in cash, and a mortgage for $650 was given for the balance of purchase money.

5. Mr. Fogal, the plaintiff, resided in Chartiers township, which adjoins Scott township. He had, a few years ago, purchased a property near this "Espy Farm" plan, which he had sold a short time before the transactions in this case. He was familiar with said plan of lots and with the building restrictions. On or about February 2, 1907, Lester E. Larned proposed that plaintiff purchase this lot from Mr. Speer. The plaintiff had been upon the ground January 13, 1907, but did not go again to look at the property, as he was familiar with it and thought the lot a bargain. He states that he purchased the lot for the purpose of building a home. He did not employ anyone to examine the title. He borrowed the $250 with which to make the cash payment from Mr. M. H. Gottschall, which, however, he has repaid. The deed was executed and delivered to plaintiff on February 4, 1907, some time in the afternoon. The next morning plaintiff went to this property, as he stated, to see Mr. Gottschall, in order to obtain from him a letter to a party in Connellsville, with whom he expected to place a loan. Whilst there he found that defendant was engaged in constructing the said building upon lot No. 1 as aforesaid, and he then came to the city, employed John A. Metz, Esq., as attorney, and filed the bill in this case some time in the afternoon of February 5, 1907.

6. Both Mr. M. H. Gottschall and Mr. Lester E. Larned are residents of the neighborhood of the property under consideration, and both of them were interested in preventing the defendant from completing said building upon lot No. 1, "Espy Farm" plan. They, with others, had previously employed Mr. John A. Metz as their attorney in the controversy. Undoubtedly Mr. Gottschall, Mr. Larned and Mr. Metz knew that defendant was erecting this building in violation of the said building restrictions. But the evidence does not establish that the plaintiff had actual knowledge, when he purchased said lot, that the defendant had commenced the erection of said building.

Whilst the evidence shows that Mr. Gottschall, Mr. Larned and Mr. Metz were all active in having the plaintiff purchase the lot under consideration, yet we cannot find from the evidence that either Gottschall or Larned was the agent, or that Mr. Metz was the attorney, of the plaintiff in the purchase of lot No. 11, "Espy Farm" plan.

7. There was executed and placed upon file in the recorder's office of said county of Allegheny a paper purporting to abolish said building line on said Banksville avenue. See exhibit "A" attached to defendant's answer. This paper was first recorded February 4, 1907, in Deed Book, vol. 1534, p. 9. It was again recorded February 6, 1907, in Deed Book, vol. 1134, p. 10. And it was finally recorded again on February 9, 1907, in Deed Book, vol. 1534, p. 13. Said paper and its indorsements are as follows:

8. It is not pretended that this agreement was signed by all the owners of lots in the "Espy Farm" plan. It was not signed by all of those who owned lots on Banksville avenue, a street in said plan, prior to the delivery of the deed aforesaid to the plaintiff.

When said agreement was first recorded, February 4, 1907, the last three names, to wit: John W. Thomas, Leanah S. Thomas and W. M. Swart, were not signed to it.

On February 4, 1907, when said agreement was first recorded, it was not signed by D. R. Speer, the plaintiff's grantor. But it was signed "D. R. Speer, pr. J. J. Speer."

D. R. Speer does not appear to have signed the paper, but, on February 5, 1907, he acknowledged the same before a notary public.

The paper was not signed by Leanah S. Thomas, an owner of a lot in said plan, when it was recorded February 4, 1907. Her name was signed thereto "Leanah S. Thomas, by Jno. W. Thomas." It was afterward signed by John W. and Leanah S. Thomas, was acknowledged by them on February 5, 1907, and the same day recorded a second time.

The paper was not signed by J. P. Richardson, owner of lot No. 4 in said plan, prior to the delivery of the deed to the plaintiff. On February 4, 1907, Mr. Richardson gave an option to the defendant to purchase said lot within five days (exhibit No. 1). Subsequently, on February 9, 1907, Mr. Richardson and the defendant entered into an agreement (exhibit No. 2) for the sale of said lot on or before February 9, 1908. No deed has yet been delivered.

The paper was not signed by Manus Cannon, owner of lot No. 9 in said plan, prior to the delivery of the deed to plaintiff. But after the paper was recorded, on February 4, 1907, and the defendant had obtained the option from Mr. Richardson and had agreed to purchase the lot of Manus Cannon, he, the defendant, along with John W. Thomas and Leanah S. Thomas, again signed the said paper.

9. There is no written evidence of the authority of J. J. Speer to sign the name of D. R. Speer to the said writing, dated March 28, 1906, and attached as exhibit "A" to the defendant's answer, abolishing the building line on Banksville avenue and extinguishing said easement. D. R. Speer did not know that his name had been signed to the paper until the day after he had delivered the deed to plaintiff, as aforesaid. D. R. Speer had, however, verbally stated to the defendant that he was in favor of the abolition of said building line on Banksville avenue, and this was done prior to the time that defendant commenced the erection of said building. There is no evidence of any kind of the authority of John W. Thomas to sign the name of Leanah S. Thomas to said paper.

The court entered a decree awarding an injunction.

*Error assigned* was the decree of the court.

*R. B. Ivory,* of *Ivory, Kiskadden & Moore,* with him *H. M. Stilley,* for appellant.—Now, clearly the building was notice to Fogal that Swart was occupying that easement, and it became his duty to inquire by what right he was there. The rule is the same as though Swart was on the lot Fogal bought: Woods v. Farmere, 7 Watts, 382–384; Meehan v. Williams, 48 Pa. 238; Sailor v. Hertzog, 4 Whart. 259; Hottenstein v. Lerch, 104 Pa. 454; Ward v. Metropolitan El. Ry. Co., 152 N. Y. 39 (46 N. E. Repr. 319).

*Ernest C. Irwin,* with him *John A. Metz,* for appellee.

OPINION BY BEAVER, J., October 12, 1908:

It clearly appears from the bill and answer that a building restriction line was established by the owner of the lots, through whom both plaintiff and defendant claim title. The plaintiff claims lot No. 11 in a plan of eighteen lots, through one D. R. Speer, who was the owner of four lots, of which it was one, and who conveyed to him February 4, 1907, the conveyance being made subject to the restriction, as contained in the plan of lots originally laid out by the owner of the land embraced in the plan, which was duly recorded.

The defendant seeks to avoid the restriction, subject to which the conveyance was made to the plaintiff, upon the ground, that Speer, the plaintiff's vendor, verbally assented to the abolition of the building line, and subsequently signed an agreement in which all the lot owners joined, agreeing to its abolition.

We can find nothing in the so-called verbal assent which can be construed as an actual agreement to abolish the restriction, and even if it could be so construed, it would not have been binding upon the plaintiff's vendor for the reason that it is within the statute of frauds. "A parol agreement between the owners of the servient and dominant tenements will not extinguish a servitude created by deed; this can be only by deed or note in writing or operation of law:" Erb v. Brown et al., 69 Pa. 216; Hudson v. Watson, 2 Pa. Superior Ct. 422.

As to the written agreement, it clearly appears that it was signed by the son of the plaintiff's vendor, without authority, verbal or written, and was not called to the attention of the father until after the date of his deed to the plaintiff. It is true that the signature of the father by his son was sanctioned by the acknowledgment of the former, but this was subsequent to his conveyance to the plaintiff, and could, therefore, relate only to the three lots in the plot of the Espey farm, which he still held.

The court has found, as a fact, based upon sufficient evidence, that the plaintiff purchased his lot, without notice of the abolition of the building line and without knowledge of the erection by the defendant of his building in violation of the restriction.

The effort is made by the defendant to charge the plaintiff with the knowledge of certain parties interested in maintaining the restriction through whom the plaintiff purchased his lot, but the court finds distinctly, as we think, upon the clear preponderance of the evidence, that these parties did not in any way represent the plaintiff, and that he was not, therefore, bound by their knowledge.

The findings of fact of the court below are all based upon the preponderance of the testimony, and the conclusions of law naturally, logically and legally follow from the facts as found. It follows that the decree is free from error and is, therefore, affirmed, and the appeal dismissed at the costs of the appellant.