## Laage's Appeal

*Oscar O. Bean,* for petitioner.

*Joseph Pappano,* for Pennsylvania Liquor Control Board.

KELLER, P. J., March 23, 1938.—The facts in this case are not in dispute. From the pleadings and stipulations agreed upon it appears that on October 1, 1937, appellant, Josephine Laage, applied to the Pennsylvania Liquor Control Board for a liquor license for her restaurant in the Township of Warrington, Bucks County, Pa. The board refused her application for the sole reason that the deed to the property for which the license was sought contains a restriction against the erection thereon of any building to be used or occupied as a drinking saloon for spirituous liquors.

Appellant and her husband are the owners, by entireties, of the property upon which the restaurant is located, having acquired title thereto by deed from Harry Darrah and wife, dated October 25, 1932, and recorded in the Recorder's Office of Bucks County in Deed Book no. 608, page 503. This deed contains the following stipulation: "Subject, however, to the express restriction and condition that there shall not at any time hereafter, be any building or buildings erected, used or occupied on the hereby granted premises or any part thereof, as a drinking saloon for spirituous liquors", etc. This restriction was originally created by the Lupus Building & Loan Association which acquired title to a tract of land from T. Hart Ross, Sheriff, on June 14, 1930, and recorded in the Recorder's Office aforesaid in Deed Book no. 567, page 570, and then subdivided the same and sold therefrom various lots and parcels of land, including the lot now owned by applicant, subject thereto. The Lupus Building & Loan Association has disposed of all of its land acquired by the above deed and at the time of the refusal of the license by the Liquor Control Board did not and does not now own, occupy, or possess any of the land affected by the said restriction. The restriction affected seven other properties, adjoining or in the vicinity of the applicant's property, and all the owners thereof, by agreement dated September 24, 1937, and recorded in the Recorder's Office aforesaid, in Deed Book no. 566, page 287, have

fully rescinded, released, and extinguished said restriction insofar as the same affects their respective properties. It further appears that there are two mortgages upon the premises of applicant and that both holders thereof, by release dated February 8, 1938, have waived said restriction insofar as the same affected their mortgage liens and agreed that a license for the sale of spirituous and malt liquors might be granted by the Liquor Control Board to the said Josephine Laage for the premises covered by their respective mortgages. No release has been obtained from the Lupus Building & Loan Association, the original creator of the restriction, notwithstanding it has no objection to the granting of a license to applicant, and none of the parties affected by the restriction in the deed, who are entitled to seek enforcement thereof, has complained to the Liquor Control Board or brought any action in law or equity to enforce their rights.

Two questions have been submitted to the court as having been raised by this appeal, viz:

1. Does the Pennsylvania Liquor Control Board have the power and authority on its own motion to refuse an application for a liquor license where it appears the deed to the premises sought to be licensed contains a restriction prohibiting the use of the premises as a drinking saloon for spirituous liquors?

2. Where a deed to a property contains a restrictive covenant as to the use or uses to which the premises may be put, is it a sufficient release of said restriction to warrant the granting of a liquor license where it appears that all the present owners of the entire tract affected by said restriction have joined in a mutual release but in which the original creator of the restriction does not join, he having disposed of the entire tract which he had thus restricted, and, therefore, no longer has any right, title or interest therein?

The first of these has been passed upon so frequently by the courts of this Commonwealth and the law would

appear to be so well settled that it should not require any extended discussion. The effect of these decisions is that not only does the Liquor Control Board have the authority but it would appear to be its duty, involving, as it does, a matter of policy and public welfare, to take cognizance of any such restrictive covenants in the title to premises sought to be licensed, and, in the absence of any proof showing their extinguishment by release, abandonment, adjudication or otherwise, to respect and refuse to grant such license, notwithstanding no formal objections have been interposed by the owners of the other properties for whose benefit said restrictions were created and whose rights would be affected by their violation: Fanning's License, 23 Pa. Superior Ct. 622; Raschiatore's Appeal, 23 D. & C. 315; Vitco v. Pennsylvania Liquor Control Board, 23 D. & C. 648; Cheris' Liquor License Case, 127 Pa. Superior Ct. 355.

The Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, 47 PS §744, as its title indicates, is an act, inter alia, to regulate and restrain the sale, importation and use of certain alcoholic beverages. Section 3(a), which relates to the interpretation of the act, provides, inter alia:

"This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

The act, furthermore, created a new agency, to wit, The Pennsylvania Liquor Control Board, with extensive powers (sec. 201), to carry its provisions into effect, and gave it specific authority (sec. 203), to make regulations for its enforcement, including "(g) Forms to be used for the purposes of this act", all such regulations when adopted by the board to have the same force as if they formed a part of the act. Pursuant to the aforesaid au-

thority, the board has prepared certain regulations which have the force of law and which include written applications for retail liquor licenses in the form prepared by it. Included in the retail liquor application is an inquiry as to whether there is any clause in the deed to the premises sought to be licensed prohibiting the sale of liquor or malt or brewed beverages. Although there are no specific provisions contained in the act authorizing the refusal of retail liquor licenses for premises affected by restrictive covenants, prohibiting the sale of intoxicating liquors thereon, or the effect to be given to such covenants by the board, nevertheless, it has long been recognized to be a legal reason for the court of quarter sessions to refuse a retail liquor license because in the line of title to the property, for which the license is asked, there is a restrictive covenant against the use of the premises for the manufacture or sale of alcoholic liquors. Hence, it necessarily follows that the Liquor Control Board, which has been substituted for the Court of Quarter Sessions as the licensing agency of the Commonwealth, in the exercise of its police power and enforcement of the Pennsylvania Liquor Control Act, supra, and for the protection of the public welfare, is fully justified to refuse a retail liquor license where it appears that the deed to the premises sought to be licensed contains a restrictive covenant prohibiting the sale or use of intoxicating liquor thereon. A liquor license is in the nature of a privilege and not a matter of right. The law is well established that an applicant for a retail liquor license is not entitled to such license as a matter of right on the ground that he has complied with the provisions of the act and no remonstrances have been filed against his application; that he only has the right to bring his application to the court or licensing authority and whether or not he shall be licensed depends upon the discretion of said authority exercised in a sound and judicial manner: Raudenbusch's Petition, 120 Pa. 328; Fanning's License, supra, p. 628; Commonwealth v. Stofchek, 322 Pa. 513, 520; Raschiatore's Appeal,

supra, p. 320. In Fanning's License, the court, in affirming the lower court's refusal to grant a license, speaking through Morrison, J., says, with respect to the effect to be given by a licensing authority to restrictions or covenants in a deed (p. 625) :

"It has been strongly contended before this court that the court of quarter sessions cannot refuse a license to a petitioner who complies with the forms of the law for any other than statutory reasons. We have considered this argument with some care, but cannot agree with the contention that the reason assigned by the court below was not a legal reason. We are not willing to say that the owner of land may not convey it with a covenant, restriction or condition, that no spirituous, malt or brewed liquors may thereafter be sold thereon. Nor are we willing to say as matter of law that it is the duty of the court of quarter sessions to grant a license to an applicant for the retailing of intoxicating drinks upon a lot of land conveyed to him by a deed in which there is a plain covenant that said lot of ground or any part thereof or any building thereon erected or to be erected shall not be used or occupied in any way whatever for the manufacture, sale or storage of spirituous, vinous or malt liquor for all times after a date named. It does not seem to us that the applicant had any right to expect the court below to grant him a license to do that which was a violation of the plain restriction or covenant contained in the deed for the premises upon which he desired to sell the intoxicating liquors. Indeed it might be argued that the applicant failed to show the court that he had possession of any place where he could lawfully engage in the retail liquor business because an examination of his title showed that he was plainly restricted from selling intoxicating liquors in any building erected on the land referred to or any part of it."

McGettigan's Appeal (Q. S. Phila.), XCVII L. I. 1067, was submitted to us as an authority for the principle that in the absence of any remonstrance or complaint by someone entitled to enforce a restriction and where no ques-

tion is raised as to the validity or effect of the restriction, or the right of the complainant to ask for its enforcement, the Liquor Control Board should not take cognizance thereof and, on its own motion, refuse the licenses where all the requirements have been met. We cannot agree with the reasoning of the court in that case. On the contrary, we are of the opinion that it is the duty of an applicant for a liquor license to bring himself fully within and in every respect meet the requirements of the licensing authority and that he has no right to call upon or expect the board to aid and abet him by granting him a license to do that which is a plain violation of the restriction or covenant contained in his deed to the premises.

We come now to the second question submitted as to the effect to be given by the Liquor Control Board in the pursuance of its licensing authority to a restrictive covenant in the deed for the premises sought to be licensed, where it appears that the applicant has in all other respects complied with the requirements of the regulations; that no remonstrance has been filed to the granting of such license; and that all the present owners of the entire tract affected by the restrictive covenant have joined in a mutual release and agreement of extinguishment thereof, but in which the original creator of the restriction has not joined, he having disposed of the entire tract which he had thus restricted and no longer having any right, title, or interest therein. It is a recognized principle of law that every owner of land has a right so to deal with it as to restrain its use to its grantees within such limits as to prevent its appropriation to purposes which would impair the value or diminish the pleasure of enjoyment of that portion which he retains. It is not unusual, therefore, to find the owners of land, in subdividing it into lots or smaller parcels, in order to protect the value of the same, to impose restrictions when they sell and convey them, limiting the use to which they may be put, and these restrictions will be enforced by a court of equity unless they are unreasonable and against public policy.

Restrictions in a deed prohibiting the manufacture and sale of intoxicating liquor, as we have heretofore observed, are not unusual. They have been held to be reasonable and run with the land and may be enforced by one or more grantees of the lots against others, it being a reasonable inference and presumption that those who purchased these lots and established residences thereon did so in reliance upon the neighborhood remaining most orderly and desirable by reason of the restriction: Benner et al. v. Tacony Athletic Assn. et al., 328 Pa. 577, 579. Restrictions such as were imposed upon the premises of the applicant are primarily for the benefit of the common grantor and the grantees of the lots affected thereby. Hence the right to enforce them is vested in all the lot owners and the common grantor and can be released only by their unanimous consent. Consequently, such a restriction imposed alike upon all the lots and parcels forming a larger tract of land cannot be released to one purchaser or his grantee without the assent of other purchasers or their grantees. Furthermore, such restrictions inuring to the benefit of purchasers of the lots from a common grantor cannot be thereafter released by such grantor without the assent of all the purchasers: 4 Thompson on Real Property, sec. 3435; 27 R. C. L. §532; 18 C. J. 404, §469. In the instant case, it is an established fact that all the owners of the lots affected by the restriction, hereinbefore mentioned, have mutually entered into a written agreement of extinguishment of the restriction under consideration; said agreement to have the same force and effect as though said reservation, condition, or restriction, had never been made a part of or a condition or restriction in said deed or deeds. The only person not joining in said release is the Lupus Building & Loan Association, the common grantor and the creator of the restriction, and it is solely because of its failure to join therein, as we understand it, that the board has refused to grant the license to the applicant. Had the said association retained any part of the premises of which the

lots affected by said restriction, as aforesaid, were formerly a part, then it would continue to be an interested party and it would have had a right to enforce the restriction in a court of equity and its joinder would be necessary in order to effectuate a complete extinguishment thereof: Genske v. Jensen et ux., 188 Wis. 17, 205 N. W. 548; Fogal v. Swart, 37 Pa. Superior Ct. 217. However, where, as in the instant case, it is conceded as an established fact that the said association, as the common grantor, had disposed of the entire tract affected by said restriction, and that it no longer has any right, title, or interest therein, it necessarily follows that any interest it had in said covenants or the enforcement thereof has ended so that its release would be of no effect: Gutting et al. v. Eiermann, 165 App. Div. 916, 149 N. Y. Supp. 635. Hence, its refusal or failure to join with the grantees of said lots so affected is not, in our opinion, of itself sufficient to justify the refusal of the license by the board and the appeal must therefore be sustained.

And now, to wit, March 23, 1938, the appeal of Josephine Laage from the refusal of a restaurant liquor license by the Pennsylvania Liquor Control Board is sustained and said board is directed to grant the license as prayed for. Appellant is directed to pay the costs.